OPINION OF THE COURT
William R. Roy, J.
This litigation by an infant and his mother was initiated by service of pleadings alleging that defendant Trane, while employed as parish priest at defendant St. Adam’s Parish and as director of religious education for defendant St. Adam’s Academy, improperly subjected the infant plaintiff to sexual and other conduct against the boy’s will between August 1988 and January 1989. The first amended complaint set forth three causes of action against all defendants, the first of which combined a number of theories of liability predicated on the alleged misconduct of the priest; the second and third causes of action were a derivative action by the infant’s mother and a claim for punitive damages.
Regarding the amended complaint as a pleading alleging clergy malpractice in a variety of forms, defendant Trane, joined by the institutional defendants, moved to dismiss on the ground that no such cause of action is recognized in this jurisdiction. Before that motion was argued however, plaintiffs made the present motion for leave to serve a second amended complaint, a copy of which is included in the moving papers. The proposed pleading states as separate causes of action the theories previously included in the first cause of action in the first amended complaint, adds two causes of action for outrageous conduct causing severe emotional distress to the infant, and expands claims that the institutional defendants not only were responsible for misconduct of the priest under the principle of respondeat superior but also were themselves at fault in *824 the hiring and the failure periodically to investigate and evaluate Trane in light of the priest’s alleged known pedophilic disposition. Some of the 14 causes of action now sought to be pleaded are against defendant Trane alone, some are against only the institutional defendants, and some are against all.
Of the causes of action against him in the proposed pleading, defendant Trane served objections to three of those actions: No. 3, alleging sexual misconduct and breach of trust; No. 5, alleging violation of trust; and No. 7, alleging clergy malpractice and negligence. The institutional defendants joined in those objections, identifying as "misplaced”, "plaintiffs’ claims that his pleadings could be interpreted to state causes of action other than clergy malpractice”.
On argument of the motion to amend, the court granted plaintiffs’ motion, applying the principle of liberal allowance of amendment most recently articulated by the Appellate Division, Fourth Department, in Agway, Inc. v Williams (185 AD2d 636). It then treated defendants’ motions to dismiss as directed to the complaint as amended, and accepted the arguments tendered in objection to plaintiffs’ motion to amend as arguments in support of motions to dismiss the clergy malpractice and negligence cause of action (No. 7) and the breach and violation of trust causes of action (Nos. 3 and 5), as well as the actions against the institutional defendants, in the second amended complaint. Additionally, with the consent of counsel, the court anticipated motions by defendants to dismiss the causes of action for outrageous conduct causing severe emotional distress, now added by the second amended pleading, and indicated that it would also pass on such motions as though formally made on papers. The parties were given opportunity to tender additional submissions following argument of the motions, and each has done so, the most recent being received on August 6, 1992.
Turning first to the causes of action against the individual defendant Trane that are challenged: Because plaintiffs have alleged respondeat superior liability on the institutional defendants for the conduct of the priest, all the defendants have joined in seeking dismissal of the claims of clergy malpractice and negligence and of breach and violation of trust by him.
The facts on which the challenged claims are based, as alleged in the amended complaint and amplified by documents *825 submitted by plaintiffs in support of their motion to amend, are these:
The infant plaintiff, Martin Jones, his parents and siblings resided in the City of Oswego where, as practicing Roman Catholics, they attended and supported defendant St. Adam’s Church, a parish under the jurisdiction of defendant Roman Catholic Diocese of Syracuse, New York. Prior to the beginning of the 1988-1989 school year, Mr. and Mrs. Jones enrolled Martin, then 11, and a younger sister, in defendant St. Adam’s Elementary School, a school operated by the parish and diocese, for the coming year, and paid fees for the children’s attendance at the school.
Defendant Trane was then employed as an associate pastor at the church and director of religious education for the school. Thereafter, on two occasions between August 1, 1988 and January 31, 1989, defendant Trane obtained permission from Martin’s mother to take him with another boy to Laker Hall, an athletic facility at the SUNY Oswego Campus, in the evening to play racketball and basketball and to go swimming. Before entering the swimming pool, at the pass through showers at the pool, Trane allegedly removed all his clothing and, against their will, made Martin and the other boy do the same; he then kissed and fondled them against their will. It is also alleged that, in addition to the actual physical contact, by the conduct of Trane, Martin was threatened with and placed in apprehension of imminent offensive sexual bodily contact. The complaint further alleges that defendant Trane’s conduct arose out of and in the course of his employment by the institutional defendants and that a special relationship of trust existed between the Joneses and defendant Trane as a priest and educator of the Roman Catholic Church.
Plaintiffs contend that upon the foregoing alleged facts they may maintain actions to recover damages for substantial emotional, mental and physical injury, economic loss and expenses for care and treatment sustained and required by Martin.
Defendants jointly, in all motions directed to plaintiffs’ complaints, have relied primarily and almost exclusively on the rationale of Chief Judge Charles L. Brieant of the United States District Court for the Southern District of New York in Schmidt v Bishop (779 F Supp 321), in which summary judgment on causes of action for clergy malpractice, negligence and breach of fiduciary duty was granted, both to a *826 church pastor who had allegedly carried on long term sexual contact with the plaintiff in the course of "emotional, spiritual and familial counseling” initiated at the request of plaintiffs parents, and to his congregational and judicatory employers. The Judge concluded that, in addition to being without precedent in New York law and on other grounds, the causes of action constitutionally could not be sustained because they would require the definition of a standard of care for the cleric, and that the defining of such a standard would, in his view, necessarily run afoul of the prohibition against excessive entanglement in religion inherent in the First Amendment of the United States Constitution under Lemon v Kurtzman (403 US 602).
All defendants argue strenuously for adoption by this court of the result and conclusions reached by Judge Brieant, with which the court concurs, but in part only.
On the facts as alleged by plaintiffs the court is satisfied that the seventh cause of action, purporting to state a claim for clergy malpractice and negligence, must be dismissed, for the reason that the alleged wrongful conduct of the priest Trane constituted intentional torts — assault and battery, which are independently pleaded as three causes of action of the second amended complaint. As Judge Brieant affirmed (see, Schmidt v Bishop, supra, 779 F Supp, at 325), "New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently (Trott v Merit Dept. Store, 106 AD2d 158, 160; Masters v Becker, 22 AD2d 118, 120; Restatement [Second] of Torts § 16 [1977]). There is, properly speaking, no such thing as a negligent assault’ (Prosser and Keeton, Torts § 10, at 46 [5th ed]).” (Mazzaferro v Albany Motel Enters., 127 AD2d 374, 376; see also, Rafferty v Ogden Mem. Hosp., 140 AD2d 911.) The principle applies with equal force to the claims of negligence and malpractice, which "[i]n its strict sense * * * means the negligence of a member of a profession in his relations with his client or patient” (76 NY Jur 2d, Malpractice, § 1).
In the case now under consideration nothing alleged in plaintiffs’ pleading or set out in their documents contains any suggestion that defendant Trane’s conduct was an oversight, an inadvertent failure to exercise an expected standard of care, or a neglect; the wrongs alleged were intentional and deliberate and allegedly in their nature offensive. They there *827 fore are outside the ambit of actionable negligence and will be compensable, if compensable, under one or more of the causes of action for assault and battery, as to which defendants have not sought dismissal.
At oral argument plaintiffs’ counsel suggested that a pure negligence claim could be made out based on what was asserted to be the failure of due care by Trane in disrobing in the pool shower area, thereby exposing himself to the boy Martin. The court cannot perceive how such activity, which is a common and often expected practice incident to swimming in a pool used by many persons, could be regarded as negligence.
In view of the foregoing, the court does not find it necessary to determine whether the seventh cause of action is constitutionally infirm under the rationale of the Schmidt case (supra). Because defendants also attack the breach and violation of trust actions (Nos. 3 and 5), which in concept bear a similarity to the breach of fiduciary duty cause of action struck down in Schmidt, further consideration of the relevance of Judge Brieant’s constitutional point is, however, appropriate.
Such consideration immediately discloses a significant, and, to this court’s mind, controlling distinction between that case and the one at hand: in Schmidt (supra) the alleged clergy misconduct occurred in the context of an established and existing ongoing pastoral counseling relationship — a setting in which the functioning of the clergyperson might naturally be expected to implicate dogma and practice of the religious body to which the cleric belonged, and in which the spector of excessive entanglement looms large. It is when what is sought is an evaluation of a member of the clergy while acting as a spiritual counselor that courts have refrained from undertaking to define a standard of care, for the reason stated by Judge Brieant: "Any effort by this Court to instruct the trial jury as to the duty of care which a clergyman should exercise, would of necessity require the Court or jury to define and express the standard of care to be followed by other reasonable Presbyterian clergy of the community. This in turn would require the Court and the jury to consider the fundamental perspective and approach to counseling inherent in the beliefs and practices of that denomination. This is as unconstitutional as it is impossible. It fosters excessive entanglement with religion.” (Schmidt v Bishop, supra, 779 F Supp 321, 328.) Other cases rejecting recognition of a cause of action for *828 clergy malpractice on the excessive entanglement ground have similarly been instances in which the alleged clerical wrongdoing occurred within the counseling framework (White v Blackburn, 787 P2d 1315 [Utah]; Nally v Grace Community Church, 47 Cal 3d 278, 253 Cal Rptr 97, cert denied 490 US 1007).
In the present case, however, the facts alleged clearly fail to indicate the existence of any counseling relationship between defendant Trane and Martin of which the misconduct alleged was a part, such as might preclude an inquiry into the propriety of the priest’s conduct as an excessive involvement in the philosophy of his religious community. In this circumstance, the constitutional obstacle described in Schmidt v Bishop (779 F Supp 321, supra) should not, as defendants contend, foreclose these plaintiffs’ third and fifth causes of action for breach or violation of trust.
It may also be noted in passing that, although defendants persistently assert First Amendment protection, none makes any suggestion that the alleged sexual misconduct of defendant Trane is a part of the tenets or practices of the Roman Catholic Church, or that restraint on it by the imposition of civil liability will in any way intrude on the free exercise of religion to an extent protected by the First Amendment. For a similar situation, see Strock v Pressnell (38 Ohio St 3d 207, 527 NE2d 1235).[2] Indeed, inasmuch as it is conduct, and not *829 creed, that underlies plaintiffs’ actions, and the potential for civil consequences exists equally as to religious and nonreligious persons, and as to clergy and laypersons of all religions alike, the free exercise aspect of the First Amendment does not come into play to preclude plaintiffs’ actions (Employment Div., Dept. of Human Resources v Smith, 494 US 872, reh denied 496 US 913).
Finally, when, as here, the misconduct charged is sexual abuse of an infant, even if defendant Trane’s conduct had been within a counseling setting, this court would not dismiss the three challenged actions (Nos. 3, 5 and 7) on the ground of excessive entanglement, as did Judge Brieant in the Schmidt case (supra) for fear of venturing on a slippery slope into questions of liability impossible and unconstitutional to determine. This court does not share that apprehension, and is confident the judicial process can provide a brake to the slide when needed. In the words of Mr. Justice Harlan, "It is always possible to shrink from a first step lest the momentum will plunge the law into pitfalls that lie in the trail ahead. I, for one, however, do not believe that a 'slippery slope’ is necessarily without a constitutional toehold” (Walz v Tax Commn., 397 US 664, 699-700).
For the foregoing reasons, cause of action No. 7 is dismissed and the motions for dismissal of causes of action Nos. 3 and 5 are denied, as are the motions to dismiss cause of action No. 6 alleging outrageous conduct by defendant Trane causing severe emotional distress to Martin. As to the latter cause of action, defendants have tendered no ground for dismissal by postargument submissions beyond their inclusion of this cause of action in those opposed on oral argument for the reasons discussed above.
There remain to be considered claims asserted against the institutional defendants in the second amended complaint. These defendants (the parish, school and diocese who were alleged employers of defendant Trane) do not identify specific causes of action that they seek to have dismissed or mount discrete attacks against particular claims; instead, they ask generally for dismissal of "all causes of action directed at the Diocesan defendants on alleged failure of supervision or respondeat superior theories”. The gist of the various claims pleaded against the institutional defendants, in addition to an *830 action for outrageous conduct causing severe emotional distress, is that these defendants are vicariously liable under the principle of respondeat superior for the alleged misconduct of the priest, or are liable for their own negligence in hiring and placing the priest in contact with boys and failing periodically to evaluate his activities, with inadequate investigation of his background and with actual or constructive knowledge of his propensities.
With repeated reliance on Judge Brieant’s decision in the Schmidt case (supra), which they acknowledge is not binding but which they urge as compelling, they assert: "Under Judge Brieant’s analysis, the First Amendment precludes any intervention by this Court which would serve to define a clerical standard of care or involve sensitive judgments as to the internal affairs of clerical administration. Such activity, apart from creating a monumentally difficult task, would have a chilling effect leading indirectly to state control over the future conduct of affairs of a religious denomination.”
Liability for negligent hiring or failing periodically to evaluate defendant Trane will of course be dependent upon a sufficient showing of notice of perverted proclivities — the nature and extent of which notice is not appropriately for decision on these motions to dismiss, in view of the allegations of both actual and constructive notice that are set out in the amended pleading. If, however, plaintiffs are successful in establishing that, with knowledge that the priest was likely to commit sexual abuse on youths with whom he was put in contact, his employers placed or continued him in a setting in which such abuse occurred, the fact that the placement occurred in the course of internal administration of the religious units does not preclude holding the institutions accountable to the victim of their neglect in administration. Indeed, a contrary holding — that a religious body must be held free from any responsibility for wholly predictable and foreseeable injurious consequences of personnel decisions, although such decisions incorporate no theological or dogmatic tenets — would go beyond First Amendment protection and cloak such bodies with an exclusive immunity greater than that required for the preservation of the principles constitutionally safeguarded. As the Supreme Court of Ohio has declared, "even the most liberal construction of the First Amendment will not protect a religious organization’s decision to hire someone who it knows *831 is likely to commit criminal or tortious acts” (Byrd v Faber, 57 Ohio St 3d 56, 61, 565 NE2d 584, 590).[3]
The question whether the facts alleged, if proved, would support the imposition of liability on the institutional defendants for the alleged misconduct of defendant Trane under the principles of respondeat superior is a somewhat more difficult one. Plaintiffs argue that there has been an expansion of these principles, citing language of the Court of Appeals in Riviello v Waldron (47 NY2d 297) in which the Court recognized that "where the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment” (at 304). The two cases cited there were both instances of assaults committed by employees; both, however, were committed in what might be said to have been in furtherance of the employers’ interest; in one case a bartender assaulted an unruly patron to protect the employer’s property and to maintain order on the premises (Sims v Bergamo, 3 NY2d 531); in the other a building superintendent assaulted a tenant while attempting to enforce occupancy rules (De Wald v Seidenberg, 297 NY 335). No New York case has been cited in which an employer has been held vicariously liable for intentional sexual misconduct by an employee; the contrary result was reached in Noto v St. Vincent’s Hosp. & Med. Ctr. (160 AD2d 656, lv denied 76 NY2d 714) referring to opinion by Supreme Court Justice Dontzin reported at 142 Misc 2d 292.
In light of the foregoing, the court declines to follow the lead of Mary M. v City of Los Angeles (54 Cal 3d 202, 285 Cal Rptr 99), which plaintiffs ask to be applied, in which the Supreme Court of California held that defendant City might be liable under respondeat superior for a rape by an on-duty policeman of a woman taken into custody by him. In reversing the vacatur of a jury verdict for plaintiff and remanding for further consideration, the court placed great emphasis on the fact that police officers are vested by the public entity with authority to arrest and to use deadly force, and one resisting an officer’s proper exercise of authority is subject to criminal prosecution. In that circumstance the court held that "[wjhen police officers on duty misuse that formidable power to com *832 mit sexual assaults, the public employer must be held accountable for their actions. ' "It is, after all, the state which puts the officer in a position to employ force and which benefits from its use.” ’ ” (54 Cal 3d, at 221, 285 Cal Rptr, at 110.) The coercive authority possessed by the police officer in Mary M. serves to distinguish it from the present case. Inasmuch as plaintiffs have tendered no case in this jurisdiction imposing respondeat superior liability for intentional sexual misconduct by an employee, which on its face scarcely seems to fall within the scope of employment of a priest, the eighth cause of action will be dismissed.
As has been indicated, defendants raise no separate objections to the two causes of action added against all the defendants for outrageous conduct causing severe emotional distress, but have simply swept them in as variants of what they regard as unconstitutional claims against clergy or religious institutions. Inasmuch as these causes of action are recognized forms of litigation (Freihofer v Hearst Corp., 65 NY2d 135; Restatement [Second] of Torts § 46 [1]), and are intentional torts, as distinguished from negligence, there is no reason why they should be dismissed at this stage.
Finally, defendant Trane asks that the derivative action by Martin’s mother (the 12th cause of action in the amended pleading) be dismissed as time barred. He asserts that, of the primary causes of action pleaded on behalf of the infant, only the intentional tort claims are viable, and that the lapse of more than one year between Trane’s alleged misconduct and the commencement of the litigation precludes the prosecution of the derivative action by the mother, who lacks the benefit of the tolling for infancy which Martin enjoys. The argument fails, however, in view of the fact that the breach and violation of trust actions, with six-year Statutes of Limitation (CPLR 213 [1]), have been sustained.
In sum, defendants’ motions to dismiss are granted as to causes of action Nos. 7 and 8; as to the other causes of action to which motions have been addressed, the motions to dismiss are denied.
There remains the motion by the institutional defendants for a protective order against discovery sought by plaintiffs. By letter of August 6, defendants’ counsel have withdrawn this motion "on the understanding that counsel’s demands are limited to Father [Trane’s] employment history prior to February 1, 1989 and to such communications made in the ordinary *833 course of Diocesan administrative activities”, which appears to mirror the description set out in plaintiffs’ attorney’s letter of July 27 of the materials sought to be discovered. That being so, and the court having heard nothing by way of objection to the limitation contained in defendants’ August 6 letter, the motion for a protective order is deemed withdrawn.

. In this connection, the language of the Supreme Court of Colorado in DeStefano v Grabrian (763 P2d 275 [Colo]), which involved a claim arising out of alleged sexual misconduct by a Roman Catholic priest, is instructive. That Court said (at 283-284): "When the free exercise clause is raised as a defense, the threshold question is whether the conduct of the defendant is religious. Wisconsin v. Yoder, 406 U.S. 205, 215-16, 92 S.Ct. 1526, 1533-34, 32 L.Ed.2d 15 (1972) ('to have the protection of the [r]eligious [cjlauses the claims must be rooted in religious belief); see Note, Intentional Infliction of Emotional Distress by Spiritual Counselors: Can Outrageous Conduct be 'Free Exercise’?, 84 Mich.L.Rev. 1269, 1302 (1986). 'In the spiritual counseling context, the free exercise clause is relevant only if the defendant can show that the conduct that allegedly caused plaintiff’s distress was in fact "part of the belief and practices” of the religious group.’ Id. (citing Christofferson v. Church of Scientology, 57 Or.App. 203, 245, 644 P.2d 577, 604 (1982). The alleged misconduct of Grabrian that is at the very heart of Edna’s crossclaim is that he induced Edna to engage in a sexual relationship during the course, and as a result, of marital counseling. Edna alleged that her damages were a direct result of the sexual relationship. If the alleged conduct of Grabrian was dictated by his sincerely held religious beliefs or was consistent with the practice of his religion, we would have to resolve a difficult first amendment issue. This, however, is not the case. It has not *829 been asserted that Grabrian’s conduct falls within the practices or beliefs of the Catholic church.”

. Absent legislative prescription or an appellate court’s directive, this court will not reach out to impose the "higher standard of pleading” required by Ohio’s Supreme Court in Byrd (supra) with respect to a claim brought against a religious institution for negligent hiring (57 Ohio St 3d, at 61, 565 NE2d, at 589).