913 S.W.2d 92 (1995)
H.R.B. and B.B., Plaintiffs/Appellants,
v.
J.L.G., and Archbishop Justin Rigali of the Archdiocese of the City of St. Louis, Missouri, and Church of the Immaculate Conception School and Parish, by and through Father John Gavin, Defendants/Respondents.
No. 68010.
Missouri Court of Appeals, Eastern District.
December 19, 1995.
*94 Rebecca M. Randles, Kansas City, for appellants.
Barry A. Short, John Michael Hessel, Lewis, Rice & Fingersh, St. Louis, Gerard Thomas Noce, Evans & Dixon, St. Louis, for respondent.
GARY M. GAERTNER, Judge.
Appellants, H.R.B. ("plaintiff") and B.B. ("wife"), appeal from the judgment of the Circuit Court of the City of St. Louis dismissing their petition against respondents, J.L.G. ("defendant"), Archbishop Justin Rigali of the Archdiocese of St. Louis, Missouri ("the archbishop"), and Church of the Immaculate Conception School and Parish ("the church"). We affirm in part and reverse and remand in part.
On September 30, 1994, plaintiff and wife filed a ten-count petition alleging the following: In 1963, plaintiff was a thirteen-year-old student at a school run by the church, which was under the direct supervision and control of the archbishop. Through 1963 and 1964, plaintiff suffered various instances of sexual abuse by defendant J.L.G., a Roman Catholic priest employed by the church. As a direct result of defendant's conduct, plaintiff suffered, inter alia, severe emotional distress, lost earnings and earning capacity, sexual addiction and dysfunction, depression, anxiety, panic attacks, "and other psychological and emotional sequelae."
The petition further alleged:
15. Plaintiff and defendant ... had a confidential and/or fiduciary relationship. The power imbalance between defendant... and plaintiff increased the plaintiff's vulnerability to defendant ... and had the effect of silencing plaintiff.
16. The nature of the relationship and the sexual exploitation perpetrated upon plaintiff caused him to develop certain psychological coping mechanisms. Plaintiff was unable to ascertain his injuries and their connection to the sexual abuse perpetrated upon him until approximately October 1992.
17. In approximately October 1992, plaintiff... was hospitalized as being suicidal. At this time, he discovered that his psychological illnesses and emotional difficulties were the result of sexual abuse suffered at the hands of [defendant]. Prior to this time, he had never been diagnosed nor had any indication that the events involving sexual abuse had caused injury and ascertainable damage.
18. Therefore, plaintiff brings this action in a timely fashion pursuant to R.S.Mo. [§§ 537.046] and 516.100, in that he did not discover and could not reasonably ascertain the damages he suffered as a result of the sexual abuse until October of 1992.
The first three counts of plaintiff's and wife's petition were brought by plaintiff against defendant: breach of fiduciary duty (Count I), intentional infliction of emotional distress (Count II), and childhood sexual abuse (Count III). The next five counts were brought by plaintiff against the archbishop[1] and the church: respondeat superior (Count IV), negligence (Count V), negligent infliction of emotional distress (Count VI), intentional infliction of emotional distress (Count VII), and breach of fiduciary duty (Count VIII). The final two counts were loss of consortium claims against all the respondents, brought by plaintiff (Count IX) and wife (Count X).
On October 12, 1994, the archbishop and the church moved to dismiss the claims against them in Counts IV through X of the petition. On November 3, 1994, defendant moved to dismiss the claims against him in Counts I, II, III, IX, and X. The motions were taken under submission on January 13, 1995.
On February 22, 1995, the trial court granted both motions to dismiss. The court *95 determined plaintiff's damages were sustained and capable of ascertainment at the time of the alleged sexual abuse, and his cause of action therefore accrued at that time. The court noted that "[p]laintiff attempts to avoid the five year statute of limitations [RSMo § 516.120(4)][2] by arguing that his psychological coping mechanisms repressed any memory of the abuse until 1992." However, the court found, in reliance on Doe v. Roman Catholic Diocese, 862 S.W.2d 338 (Mo.banc 1993) and Vandenheuvel v. Sowell, 886 S.W.2d 100 (Mo.App.W.D.1994), that "repressed memory does not serve to extend the statute of limitations for Plaintiffs' claims to the time plaintiff's memory revived." The court further found RSMo § 537.046 did not extend the time for filing the petition, as the original statutes of limitationsRSMo §§ 516.120 and 516.100had already expired and the respondents had therefore acquired a vested right to be free from suit.
The trial court dismissed all the counts against defendant: Counts I, II, and III were dismissed "based on the statute of limitations[;]" Count IX (plaintiff's claim of loss of consortium) was dismissed for failure to state a claim; and Count X (wife's claim of loss of consortium) was dismissed because wife was not married to plaintiff at the time his cause of action accrued. The court also dismissed Counts IV through X against the archbishop and the church. This appeal followed.
Several statutes of limitations are involved in this case. An action for sexual abuse may be brought as a battery action, in which case the plaintiff has two years to file the action, RSMo § 516.140; or the action may be brought pursuant to RSMo § 516.120(4), which requires that tort actions not specifically enumerated by statute (but recognized at law) be brought within five years. See Doe v. Roman Catholic Diocese, 862 S.W.2d at 339. If the alleged abuse occurred when the plaintiff was a minor, RSMo § 516.170 tolls the applicable statute of limitations until the plaintiff turns twenty-one. See J.D. v. M.F., 758 S.W.2d 177, 178 (Mo.App.E.D.1988). With respect to RSMo §§ 516.120(4) and 516.140, RSMo § 516.100 provides that
the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment,....

(emphasis added.) Also, RSMo § 537.046.2 provides for independent civil actions for damages suffered as a result of childhood sexual abuse, if the action is brought within five years of the plaintiff's eighteenth birthday, or "within three years of the date the plaintiff discovers or reasonably should have discovered that the injury or illness was caused by child sexual abuse," whichever is later. However, RSMo § 537.046 does not revive actions that have expired prior to its effective date of August 28, 1990, and, if a plaintiff's suit was already barred by an existing statute of limitations on that date, the defendant has obtained a vested right to be free from suit. Doe v. Roman Catholic Diocese, 862 S.W.2d at 342.
In this case, the petition alleges defendant's acts occurred in 1963 and 1964, when plaintiff was still a minor. If plaintiff's cause of action did accrue at the time these acts occurred, time would start running upon plaintiff's twenty-first birthday in 1971 and would have expired in 1976. In their petition, plaintiff and wife allege their cause of action did not accrue at the time defendant allegedly sexually abused plaintiff, and claim the damage to plaintiff caused by defendant's alleged conduct was not capable of ascertainment until October of 1992, due to "certain psychological coping mechanisms" of plaintiff. According to plaintiff and wife, as their cause of action did not accrue until 1992, none of their claims were time-barred.
In determining when a statute of limitations begins running, "[d]amage is ascertainable when the fact of damage `can be discovered or made known,' not when a plaintiff actually discovers injury or wrongful conduct.... When damage is ascertainable is an objective determination." Sheehan v. Sheehan, 901 S.W.2d 57, 58-59 (Mo.banc *96 1995) (citations omitted). If the statute of limitations is raised as an affirmative defense, the trial court may not dismiss unless it is clearly established, on the petition's face and without exception, that the action is barred. Id. at 59. In reviewing the dismissal of a petition, reviewing courts must allow the pleading its broadest intendment, treating all facts alleged as true and construing the petition's allegations favorably to the plaintiff. Id.
Sheehan was handed down by the Missouri Supreme Court subsequent to the dismissal of plaintiff's and wife's claims. In that case, the trial court dismissed as barred by the statute of limitations a personal injury action by a daughter against her father for childhood sexual abuse. Daughter's petition alleged father committed numerous batteries and assaults when she was a minor, and was therefore subject to the two-year limit set out in RSMo § 516.140. Daughter's petition further alleged she "involuntarily repressed conscious memory" of the alleged abuse by father "throughout her childhood and young adulthood until August 1990 or thereafter." In granting father's motion to dismiss the petition, the trial court found that daughter's cause of action accrued when she was a minor and that she failed to bring her action within the two-year period allowed to her after her twenty-first birthday.
The Missouri Supreme Court reversed, ruling daughter's petition did not "clearly indicate on its face and without exception" that suit was barred before the effective dates of RSMo §§ 537.046.2 and 516.371.[3]Id. The Court stated:
[Daughter] alleges that [father]'s conduct caused "consequential injuries and damages." The petition does not state the date [daughter] "sustained and suffered" these injuries and damages; it is ambiguous as to when she objectively could have discovered or made known the fact of damage. The only date alleged is that she "involuntarily repressed conscious memory" of the abuse "until August 1990 or thereafter." Construing the allegations of the petition broadly and favorably to [daughter], her damage may not have been ascertainable "until August 1990 or thereafter."
Id. The Court distinguished Vandenheuvel v. Sowell, 886 S.W.2d 100, 104 (Mo.App.W.D. 1994)in which the Western District held that involuntary repression of memories of sexual abuse did not toll the applicable statute of limitationson the ground Vandenheuvel was decided by summary judgment, "where matters outside the pleadings indicated when damages became ascertainable." Sheehan, 901 S.W.2d at 59. "In this casedecided on a bare motion to dismissthere is no such record evidence." Id.
Here, plaintiff's and wife's petition claimed plaintiff was abused in 1963 and 1964, but was unable to ascertain the injuries he allegedly sustained due to "psychological coping mechanisms." The respondents argue this petition, unlike the petition in Sheehan, does not allege repression of memory, and its terms ("increased the plaintiff's vulnerability," "had the effect of silencing plaintiff," "coping") imply plaintiff was aware of the harm or legal wrong done to him at the time of the alleged abuse.
However, we are required to allow the pleading its broadest intendment and to construe the petition's allegations favorably to the plaintiff. See id. The petition's term "psychological coping mechanisms" may encompass, and the trial court clearly regarded it as including, involuntary repression of memory. In other words, the petition is ambiguous enough as to when plaintiff could have objectively discovered or made known the fact of injury from defendant's alleged conduct, to withstand a motion to dismiss on limitations grounds. We must take all the allegations in the petition as true, suspending any skepticism as to the merits of plaintiff's allegations. Plaintiff's damages may not have been ascertainable until October, 1992. If such was the case, the September 30, 1994, petition was timely filed with respect to RSMo §§ 516.120(4) and 537.046.
*97 Pursuant to Sheehan, we find the petition does not clearly indicate on its face and without exception that Counts I through VIII, and Count X (wife's loss of consortium claim), are barred by the statute of limitations.
However, we will affirm the dismissal of a petition if it can be sustained on any ground presented to and considered by the trial court, regardless of whether the court relied on that ground. Property Exchange & Sales, Inc. v. King, 822 S.W.2d 572, 573 (Mo.App.E.D.1992). The archbishop and the church argue Count IV, plaintiff's claim of respondeat superior, failed to state a cause of action and was properly dismissed. According to the archbishop and the church, the petition on its face shows defendant was not acting within the course and scope of his employment when he allegedly engaged in sexual contact with plaintiff.
Under the doctrine of respondeat superior, an employer is liable to third parties for torts committed by an employee, if the tort was committed while employee was engaged in activities within the course and scope of his or her employment. P.S. v. Psychiatric Coverage, Ltd., 887 S.W.2d 622, 624 (Mo.App.E.D.1994). An act is committed within "the scope and course of employment" if it is done by virtue of the employment and in furtherance of the business or interest of the employer, regardless of the time or motive of the conduct. Id. "If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business." Id.
In Psychiatric Coverage, we held the employer was not vicariously liable under respondeat superior for the sexual misconduct of an employee therapist, as this misconduct did not occur as part of any therapy program nor was it intended to further the employer's business, but rather "resulted from purely private and personal desires." Id. at 625. Further, other jurisdictions have refused to find religious organizations vicariously liable on respondeat superior grounds for the sexual misconduct of individual clerics. See Tichenor v. Roman Catholic Church of New Orleans, 32 F.3d 953, 959-960 (5th Cir.1994); Destefano v. Grabrian, 763 P.2d 275, 287 (Colo.1988) (sexual misconduct of defendant priest "is contrary to the principles of Catholicism and is not incidental to the tasks assigned a priest by the diocese"); Byrd v. Faber, 57 Ohio St.3d 56, 565 N.E.2d 584, 588 (1991) (relied on by Psychiatric Coverage, 887 S.W.2d at 625 n. 4).
The above reasoning applies here. The acts of defendant alleged in plaintiff's and wife's petition clearly were not part of defendant's duties as a priest or as a teacher, nor were they intended to further any religious or educational interests of the Catholic Church. Accordingly, we affirm the dismissal of Count IV.
The respondents also offer alternative justifications for affirming the trial court's dismissal of plaintiff's claims of breach of fiduciary duty against defendant (Count I) and the archbishop and the church (Count VIII). Count I of plaintiff's and wife's petition alleged defendant "gained the trust and confidence of plaintiff" by holding himself out as a "teacher, counselor and qualified parish priest" and alleged his actions "constitute a breach of his fiduciary duties and of his trusted, confidential relationship with the plaintiff." Count VIII alleged plaintiff "reposed trust and confidence" in the archbishop and the church "as safe, competent spiritual advisors and counselors" who "owed plaintiff a duty of trust and loyalty and the duty to work solely for the benefit of their parishioners and supplicants including plaintiff." Count VIII further alleged the archbishop and the church "breached their fiduciary duties towards their parishioners, including plaintiff, and abused their position of trust and confidence in failing to protect plaintiff and others similarly situated from defendant ... after [they] knew or should have known of his dangerous propensities...."
The respondents contend Missouri does not recognize the claims set out in Counts I and VIII of plaintiff's petition, citing Doe v. Roman Catholic Diocese as authority. In that case (wherein the plaintiff's claims of *98 breach of fiduciary duty and clergy malpractice were found barred by the statutes of limitations) the Missouri Supreme Court noted:
Although battery is clearly actionable, Missouri courts have not addressed the propriety of the causes of action for clergy malpractice or the tort of breach of fiduciary duty, at least in the context of childhood sexual assaults.
862 S.W.2d at 339 n. 2. The respondents also contend Counts I and VIII are not justiciable controversies, on the ground the First Amendment prohibits secular courts from defining and analyzing the scope of fiduciary duties owed by clergy and churches to their parishioners.
Clergy and religious organizations are not absolutely immune from civil liability. See Hester v. Barnett, 723 S.W.2d 544, 552 (Mo.App.W.D.1987). Tort actions against religious groups or persons are not offensive to the First Amendment if based on purely secular activities, unrelated to their religious functions; if the alleged wrongdoing was clearly outside the tenets of the religion, notwithstanding its religious pretext, then it is actionable. See id. at 558-564.
Missouri courts have not addressed whether clergy and religious organizations can be held civilly liable in actions for breach of fiduciary duty with respect to sexual misconduct of clergy. Our review of the law in other jurisdictions compels us to conclude such actions should not be recognized, as they will inevitably entangle civil courts in religious matters.
Causes of action for breach of fiduciary duty with respect to sexual misconduct of clergy were recognized in Jones by Jones v. Trane, 153 Misc.2d 822, 591 N.Y.S.2d 927, 931 (Sup.1992), Moses v. Diocese of Colorado, 863 P.2d 310, 322 (Colo.1993), Destefano v. Grabrian, 763 P.2d 275, 284 (Colo.1988), and Erickson v. Christenson, 99 Or.App. 104, 781 P.2d 383, 386 (1989). These cases reasoned that if the tortious behavior of the cleric was not religiously motivated, could be evaluated by means of "neutral principles" applicable to clergy and lay persons alike, and did not require inquiry into the tenets and beliefs of the particular cleric's faith, the First Amendment was not a defense to such actions. See Moses, 863 P.2d at 321. In other words,
inasmuch as it is conduct, and not creed, that underlies plaintiffs' actions, and that the potential for civil consequences exists equally as to religious and non-religious persons, and as to clergy and lay persons of all religions alike, the Free Exercise aspect of the First Amendment does not come into play to preclude plaintiffs' [breach of fiduciary duty action]....
Jones, 591 N.Y.S.2d at 931 (citation omitted).
Conversely, similar causes of action for breach of fiduciary duty were rejected in Schmidt v. Bishop, 779 F.Supp. 321, 325-326 (S.D.N.Y.1991), Dausch v. Rykse, 52 F.3d 1425, 1438 (7th Cir.1994), and Schieffer v. Catholic Archdiocese of Omaha, 244 Neb. 715, 508 N.W.2d 907, 912 (1993). In those cases, the courts held that analyzing and defining the scope of fiduciary duty owed persons by their clergy (assuming pastoral relationships were "fiduciary") would require courts to define and express the standard of care followed by reasonable clergy of the particular faith involved, which in turn
would require the Court and the jury to consider the fundamental perspective and approach to counseling inherent in the beliefs and practices of that denomination. This is as unconstitutional as it is impossible. It fosters excessive entanglement with religion.
Schmidt, 779 F.Supp. at 328. Further, while it may be argued that "it requires no excessive entanglement with religion to decide that reasonably prudent clergy of any sect do not molest children[,]" allowing actions for breach of fiduciary duty in such situations places courts "on the slippery slope and is an unnecessary venture, since existing laws ... provide adequate protection for society's interests." Id.
We align ourselves with the jurisdictions that have refused to recognize breach-of-fiduciary-duty actions against clergy for sexual misconduct. It is true the alleged behavior of defendant was not religiously motivated; in fact, it contravened the tenets and principles of the Catholic Church. However, other causes of action are available for these acts *99 (i.e., intentional infliction of emotional distress, childhood sexual abuse), which do not require the trial court to determine whether defendant breached "his trusted, confidential relationship with the plaintiff" or whether the archbishop and the church breached "their fiduciary duties towards their parishioners, including plaintiff, and abused their position of trust and confidence[,]" as alleged in plaintiff's petition.
Religion was not merely incidental to plaintiff's relationship with defendant, the archbishop, and the church; it was the foundation for it. Counts I and VIII will inevitably require inquiry into the religious aspects of this relationship, that is, the duty owed by Catholic priests, parishes, and dioceses to their parishioners. The First Amendment does not allow secular courts to judge sectarian matters. Counts I and VIII are not actionable and their dismissal is affirmed.[4]
Finally, Count IX, plaintiff's action for loss of consortium, was properly dismissed by the trial court for failure to state a claim. When a married person is injured, two independent, separate and distinct causes of action arise: one accrues to the injured person for the injuries, and the other accrues to the injured person's spouse for damages suffered as a result of his or her loss of the injured person's services, society and companionship. Smith v. Paslode Corp., 799 F.Supp. 960, 964 (E.D.Mo.1992). The latter action is derivative only; a spouse cannot recover for loss of consortium if the other spouse has no valid claim for personal injuries. Teschner v. Physicians Radiology, 761 S.W.2d 665, 667 (Mo.App.E.D.1988).
Here, the petition does not allege any direct personal injury sustained by wife; she had no valid claim of her own. Plaintiff seeks to derive his loss of consortium claim from his own injuries, not those of wife, thereby duplicating the damages he seeks in his primary claim. Plaintiff failed to state a cause of action on this claim. We affirm the trial court's dismissal of Count IX.[5]
The dismissal of Counts I, IV, VIII, and IX is affirmed; the dismissal of Counts II, III, V, VI, VII, and X is reversed and cause remanded for further proceedings.
SMITH, P.J. and RHODES RUSSELL, J. concur.
NOTES
[1] The petition named the archdiocese and the archbishop as separate parties, but the two are treated as one and the same in the trial court's judgment and by the parties on appeal.
[2] All statutory references are to RSMo 1994 unless otherwise indicated.
[3] RSMo § 516.371 provides an action for familial sexual abuse, and went into effect August 28, 1989.
[4] Plaintiff did not bring a clergy malpractice claim in the immediate case; however, we note courts in other jurisdictions have uniformly refused to recognize clergy malpractice as a cause of action for sexual misconduct of a cleric. See Dausch v. Rykse, 52 F.3d 1425, 1432 (7th Cir. 1994); Schmidt v. Bishop, 779 F.Supp. 321, 327-328 (S.D.N.Y.1991); Schieffer v. Catholic Archdiocese of Omaha, 244 Neb. 715, 508 N.W.2d 907, 911 (1993); Jones by Jones v. Trane, 153 Misc.2d 822, 591 N.Y.S.2d 927, 930 (Sup. 1992); Byrd v. Faber, 57 Ohio St.3d 56, 565 N.E.2d 584, 587 (1991); Destefano v. Grabrian, 763 P.2d 275, 285 (Colo.1988).

We further note that, while the archbishop and the church challenged Counts V, VI, and VIIplaintiff's claims of negligence in the hiring and supervision of defendant, of negligent infliction of emotional distress, and of intentional interference with emotional distress, respectivelyon limitations grounds only and offered no alternative grounds for their dismissal at trial or on appeal, the allegations in these counts raise First Amendment concerns which may need to be addressed upon remand. See Isely v. Capuchin Province, 880 F.Supp. 1138, 1150-1158 (E.D.Mich.1995); Pritzlaff v. Archdiocese of Milwaukee, 194 Wis.2d 303, 533 N.W.2d 780, 789-792 (1995).
[5] With respect to Count X, wife's claim of loss of consortium, we note if it is determined on remand that plaintiff's cause of action accrued prior to their marriage, wife will not be able to recover on this claim. Claims for loss of consortium based on spousal injuries sustained prior to marriage are precluded, unless neither spouse is aware of the tortious conduct or injury at the time of their marriage. Smith v. Paslode Corp., 799 F.Supp. at 964.