Michael GIBSON, Narron Gibson and
Marianne Gibson, Appellants–
Respondents,

v.

Father Michael BREWER,
Respondent–Appellant,

and

Catholic Chancery—Diocese of Kansas
City—St. Joseph, Respondent.

No. 79291.

Supreme Court of Missouri,
En Banc.

Aug. 19, 1997.

See also, 950 S.W.2d 232.

Sylvester James, Jr., Nancy E. Kinner, Brian C. Fries, Kansas City, for Appellants–Respondents.

James R. Wyrsch, Michael P. Joyce, Kansas City, for Respondent–Appellant.

James P. Tierney, William M. Stapleton, Brian J. Madden, Kansas City, for Respondent.

Carl H. Esbeck, Columbia, for amicus curiae.

Timothy Belz, St. Louis, for amicus curiae, Center for Law & Religious Freedom of the Christian Legal Society, etc.

BENTON, Chief Justice.

Michael Gibson and his parents Narron and Marianne Gibson appeal judgments of the circuit court dismissing several counts of their petition against Father Michael Brewer and all counts against The Catholic Diocese of Kansas City–St. Joseph. Brewer purports to cross-appeal the trial court's failure to dismiss the remaining counts.

The circuit court determined that there was no just reason to delay the appeals. *Rule 74.01(b)*. After opinion by the Court of Appeals, Western District, this Court granted transfer and now affirms in part, reverses in part, dismisses all appeals by or against Brewer, and remands.

## I.

■ This case was decided on motions to dismiss, prior to answer and discovery. Therefore, the facts are assumed as averred in the petitions. *See Johnson v. Kraft General Foods*, 885 S.W.2d 334, 335 (Mo. banc 1994).

Father Brewer, a Catholic priest and an associate pastor, invited Michael Gibson and a friend to spend the night and watch movies in the church Rectory. Michael alleges that early in the morning, Brewer touched or fondled him in a sexual, offensive, and unwelcome manner.

Michael's parents, upon discovering the incident, reported it to the Diocese. Officials of the Diocese told them that "this happens to young men all the time" and that Michael "would get over it." Diocese employees urged them to meet with Brewer to resolve the situation. After hearing of similar incidents between Brewer and other young boys, the Gibsons "expressed their concerns to the Diocese." They were told that the incident with Michael was "an innocent pat on the butt" and that they should "forgive and forget" and get on with their lives. According to the Gibsons, the Diocese continued to ignore them until Brewer was eventually removed from the Diocese.

The Gibsons filed a petition for damages against both Brewer and the Diocese, alleging nine counts: battery, negligent hiring/ordination/retention, negligent failure to super-

vise, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of fiduciary duty, conspiracy, agency liability, and independent negligence of the Diocese. The trial court issued ·two judgments. One dismissed all counts against the Diocese for "failure to state a claim upon which relief can be granted and because such claims as alleged against said defendant infringe upon its rights provided by the First Amendment to the United States Constitution." The other judgment dismissed all counts against Brewer except battery, negligent infliction of emotional distress, and intentional infliction of emotional distress.

## II. Counts Against Brewer

██ None of the parties question the authority of the trial court to certify its judgments as appealable under Rule 74.01(b). This Court *sua sponte* must determine its jurisdiction of these appeals. *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995). "A prerequisite to appellate review is that there be a final judgment." *Id.* citing § 512.020. If the trial court's judgments are not final, this Court lacks jurisdiction and the appeals must be dismissed. *Committee for Educ. Equality v. State*, 878 S.W.2d 446, 454 (Mo. banc 1994). An appealable judgment resolves all issues in a case, leaving nothing for future determination. *Boley*, 905 S.W.2d at 88.

██ Rule 74.01(b) provides an exception to this "finality rule" for cases with multiple claims. A trial court may enter judgment on less than all claims and certify that there is "no just reason for delay." *Id.* The designation by a trial court that its order is final and appealable is not conclusive. *Klippel v. Watkins*, 667 S.W.2d 28, 30 (Mo.App.1984). It is the content, substance, and effect of the order that determines finality and appealabilty. *Erslon v. Cusumano*, 691 S.W.2d 310, 312 (Mo.App.1985).

██ Although a circuit court may designate its judgment final as to particular claims, this designation is effective only when the order disposes of a distinct "judicial unit." *Erslon*, 691 S.W.2d at 312; *See J. Lewin Bookbinding Co. v. Holliston Mills*, 665 S.W.2d 375, 377 (Mo.App.1984); *Lake v.*

*Durham Life Ins. Co.*, 663 S.W.2d 322, 323–24 (Mo.App.1983). The required "judicial unit for an appeal" has a settled meaning: "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *State ex rel. State Hwy. Comm'n v. Smith*, 303 S.W.2d 120, 123 (Mo.1957). "An order dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation." *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597, 600 (1953). It is "differing," "separate," "distinct" transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim. *Id.*

True, this Court once stated that the court of appeals' decisions cited in the preceding paragraphs should no longer be followed. *Speck v. Union Elec. Co.*, 731 S.W.2d 16, 20 n. 2 (Mo. banc 1987). However, this Court more recently called these cases "well-reasoned decisions." *Committee for Educ. Equality v. State*, 878 S.W.2d at 454. Footnote 2 in *Speck* is, in fact, the authority that should not be followed, because, the very year *Speck* was decided, this Court adopted Rule 74.01(b) and repealed Rule 81.06 (that *Speck* had applied)—with the result that *Speck* was "rethought," *id.*, and the cases cited in this opinion are again good law.

██ Here the circuit court did not dismiss the Gibsons' counts for battery, negligent infliction of emotional distress, and intentional infliction of emotional distress against Brewer, which remain pending in the trial court. The other counts purportedly certified as final and appealable—breach of fiduciary duty and conspiracy—expressly incorporate the same facts as the counts pending in the circuit court. The pending counts clearly arise from the same set of facts, and the same transactions and occurrences, as the counts supposedly appealed. Accordingly, the trial court did not resolve a single, distinct judicial unit, and its judgment is

neither final nor appealable as to the claims against Brewer. This Court has no jurisdiction of the appeals by or against Brewer, which are hereby dismissed. *See Erslon,* 691 S.W.2d at 312.

### III. Counts Against the Diocese

■■■ The circuit court dismissed all counts against the Diocese. Accordingly, the trial court resolved all legal issues and left open no remedies for the Gibsons against the Diocese. A circuit court may enter judgment as to fewer than all parties and certify that there is "no just reason for delay." *Rule 74.01(b).* When one defendant, but not all defendants, is dismissed from a case, the trial court may designate its judgment as final "for purposes of appeal." *Spires v. Edgar,* 513 S.W.2d 372, 375 (Mo. banc 1974). The circuit court did not abuse its discretion in determining that the judgments in favor of the Diocese were final and appealable. This Court has jurisdiction over the appeals against the Diocese. *Mo. Const. art. V, § 10.*

■■ Review of dismissal of a petition allows pleadings their broadest intendment, treats all facts alleged as true, construes all allegations favorably to plaintiff, and determines whether averments invoke principles of substantive law. *Farm Bureau Town & Country Ins. v. Angoff,* 909 S.W.2d 348, 351 (Mo. banc 1995).

### A. Failure To State A Claim

### 1. Breach of Fiduciary Duty

■■ The Gibsons allege that the Diocese "stood in a fiduciary relationship with the plaintiffs as recipients of services controlled, directed and/or monitored by the defendant Diocese," and that the Diocese "held a fiduciary relationship of trust and confidence with the Gibsons." Other than these general conclusions, the Gibsons simply incorporate—as a "breach of fiduciary duty"—the other factual allegations in their petition.

■■ Missouri is a fact-pleading state. *Luethans v. Washington University,* 894 S.W.2d 169, 171 (Mo. banc 1995). Pleadings must contain a "short and plain statement of the facts showing that the pleader is entitled

to relief." *Rule 55.05.* Fact-pleading presents, limits, defines and isolates the contested issues for the trial court and the parties in order to expedite a trial on the merits. *Luethans,* 894 S.W.2d at 171–72.

The count of breach of fiduciary duty does not comply with the basic pleading rules. The trial court did not err in dismissing this count for failure to state a claim.

### 2. Conspiracy

■■ The Gibsons allege that the Diocese conspired with Brewer to commit acts of sexual misconduct and intentional infliction of emotion distress, because it (1) knew or should have known that Brewer was committing sexual misconduct and failed to take any action to prevent it or to warn them, (2) failed to remove Brewer from his position, (3) hid the conduct of Brewer and other priests from the public, (4) refused to acknowledge the problem or educate the public, (5) ignored the problem, and (6) extracted confidentiality agreements from sex abuse victims.

■■ A civil conspiracy is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act. *Ritterbusch v. Holt,* 789 S.W.2d 491, 494 (Mo. banc 1990). A plaintiff must establish that two or more persons with an unlawful objective, after a meeting of the minds, committed at least one act in furtherance of the conspiracy, damaging the plaintiff. *Rice v. Hodapp,* 919 S.W.2d 240, 245 (Mo. banc 1996).

The Gibsons' allegations do not support the inference of a "meeting of the minds." The trial court properly dismissed the conspiracy count for failure to state a claim upon which relief can be granted.

### 3. Respondeat Superior/Agency Liability

■■■ The Gibsons state the conclusion that Brewer was "acting in the course and scope of authority given him by defendant when he committed the acts alleged." Under the doctrine of *respondeat superior,* a principal is liable for its agent's acts that are (1) within the scope of employment and (2) done

as a means or for the purpose of doing the work assigned by the principal. *Henderson v. Laclede Radio, Inc.*, 506 S.W.2d 434, 436 (Mo.1974); *Linam v. Murphy*, 360 Mo. 1140, 232 S.W.2d 937, 941 (1950). Even the authorities cited by the Gibsons acknowledge that intentional sexual misconduct and intentional infliction of emotional distress are not within the scope of employment of a priest, and are in fact forbidden. *See e.g., Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584, 588 (1991); *Konkle v. Henson*, 672 N.E.2d 450, 457 (Ind.App.1996). On the facts pleaded in this case, the Diocese is not liable under an agency theory.

### B. The First Amendment

■ The Gibsons argue that the trial court erred in dismissing their claims, based on the First Amendment: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof...." *U.S. Const., Amend. I.* The First Amendment applies to the states by incorporation into the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); *Congregation Temple Israel v. City of Creve Coeur*, 320 S.W.2d 451, 454 (Mo. 1959). The First Amendment applies to any application of state power, including judicial decision on a state's common law. *Kreshik v. Saint Nicholas Cathedral*, 363 U.S. 190, 191, 80 S.Ct. 1037, 1038, 4 L.Ed.2d 1140 (1960).

■ None of the parties cite, let alone discuss, the religion clauses of the Missouri Constitution, article I, sections 5–7. This Court has held "that the provisions of the Missouri Constitution declaring that there shall be a separation of church and state are not only more explicit but more restrictive" than the First Amendment. *Paster v. Tussey*, 512 S.W.2d 97, 101–02 (Mo. banc 1974). Therefore, this Court does not address the applicability, if any, of the Missouri Constitution to this case.

### 1. Negligent Hiring/Ordination/Retention of Clergy

■ The Gibsons allege that the Diocese was negligent in "hiring/ordaining" and then retaining Brewer. Negligence is "con-

duct which falls below the standard established by law for the protection of others against unreasonable risk of harm." *Restatement (Second) of Torts sec. 282* (1965). To establish a claim for negligent hiring or retention, a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries. *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo.App. 1983). *See also McHaffie v. Bunch*, 891 S.W.2d 822, 825–26 (Mo. banc 1995); *Porter v. Thompson*, 357 Mo. 31, 206 S.W.2d 509, 512 (1947).

■ Religious organizations are not immune from civil liability for the acts of their clergy. *H.R.B. v. J.L.G.*, 913 S.W.2d 92, 98 (Mo.App.1995). If neutral principles of law can be applied without determining questions of religious doctrine, polity, and practice, then a court may impose liability. *Presbyterian Church v. Mary Eliz. Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969); *Jones v. Wolf*, 443 U.S. 595, 603, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979); *Presbytery of Elijah Parish Lovejoy v. Jaeggi*, 682 S.W.2d 465, 467–68 (Mo. banc 1984). For example, a church can be vicariously liable for the negligent operation of a vehicle by a pastor in the scope of employment. *See, e.g., Garber v. Scott*, 525 S.W.2d 114, 119–20 (Mo. App.1975); *cf. Cox v. New Hampshire*, 312 U.S. 569, 574, 578, 61 S.Ct. 762, 765, 767, 85 L.Ed. 1049 (1941). This Court—when abolishing the doctrine of charitable immunity in Missouri—authorized a person who slipped and fell on church premises to sue for negligence. *Garnier v. St. Andrew Presbyterian Church of St. Louis*, 446 S.W.2d 607, 608 (Mo. banc 1969). "The result is that the church, as the owner and occupier of the premises in question, is subject to all the duties and liabilities which are incident to the ownership and possession of real estate." *Claridge v. Watson Terrace Christian Church*, 457 S.W.2d 785, 787 (Mo. banc 1970).

■ Questions of hiring, ordaining, and retaining clergy, however, necessarily involve interpretation of religious doctrine, policy,

and administration. Such excessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment. *See Agostini v. Felton,* — U.S. —, —, 117 S.Ct. 1997, 2015, 138 L.Ed.2d 391 (1997); *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 708–11, 96 S.Ct. 2372, 2380–81, 49 L.Ed.2d 151, *reh. denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976). *See also Watson v. Jones,* 13 Wall. 679, 80 U.S. 679, 727, 20 L.Ed. 666 (1871).

 By the same token, judicial inquiry into hiring, ordaining, and retaining clergy would result in an endorsement of religion, by approving one model for church hiring, ordination, and retention of clergy. *Agostini,* — U.S. at —, 117 S.Ct. at 2015. A church's freedom to select clergy is protected "as a part of the free exercise of religion against state interference." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94, 116, 73 S.Ct. 143, 154–55, 97 L.Ed. 120 (1952). *See also Gonzalez v. Roman Catholic Archbishop,* 280 U.S. 1, 16, 50 S.Ct. 5, 7–8, 74 L.Ed. 131 (1929); *Scharon v. St. Luke's Episcopal Presbyterian Hosp.,* 929 F.2d 360, 363 (8th Cir.1991). Ordination of a priest is a "quintessentially religious" matter, "whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals of this hierarchical church." *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. at 720, 96 S.Ct. at 2385. The trial court did not err in dismissing the claims of negligent hiring/ordination/retention.

### 2. Negligent Failure to Supervise Clergy

The Gibsons allege that after Brewer was hired/ordained, the Diocese had a duty to supervise his activities, which it failed to do. The Gibsons assert that the Diocese "knew or reasonably should have known of prior sexual misconduct and/or a propensity to such conduct" by Brewer.

 Negligent supervision implicates the duty of a master to control conduct of a servant:

A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

*Restatement (Second) of Torts, sec. 317* (1965). *See also Conroy v. City of Ballwin,* 723 S.W.2d 476, 479 (Mo.App.1986).

 Adjudicating the reasonableness of a church's supervision of a cleric—what the church "should know"—requires inquiry into religious doctrine. Based on the authorities cited in section III.B.1, this would create an excessive entanglement, inhibit religion, and result in the endorsement of one model of supervision. *See Agostini,* — U.S. at —, 117 S.Ct. at 2015; *Kedroff,* 344 U.S. at 116, 73 S.Ct. at 154–55; *Gonzalez,* 280 U.S. at 16, 50 S.Ct. at 7–8; *Scharon,* 929 F.2d at 363; *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. at 720, 96 S.Ct. at 2385.

 Not recognizing the cause of negligent failure to supervise clergy is not an establishment of religion because it is a "nondiscriminatory religious-practice exemption." *Employment Division v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 1606, 108 L.Ed.2d 876 (1990). It achieves "a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Walz v. Tax Commission,* 397 U.S. 664, 669, 90 S.Ct. 1409, 1412, 25 L.Ed.2d 697 (1970); *Corporation of Presiding Bishop of Church of Jesus Christ of Latter–day Saints v. Amos,* 483 U.S. 327, 334, 107 S.Ct. 2862, 2867–68, 97 L.Ed.2d 273 (1987). Nonrecognition of this negligence tort preserves "the autonomy and freedom of religious bod-

ies while avoiding any semblance of established religion." *Walz,* 397 U.S. at 672, 90 S.Ct. at 1413.

This Court has considered the cases cited by the Gibsons. *See Moses v. Diocese of Colorado,* 863 P.2d 310 (Colo.1993), *cert. denied,* 511 U.S. 1137, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994); *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988); *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991); *Konkle v. Henson,* 672 N.E.2d 450 (Ind.App.1996); *Erickson v. Christenson,* 99 Or.App. 104, 781 P.2d 383 (1989); *Jones v. Trane,* 153 Misc.2d 822, 591 N.Y.S.2d 927 (Sup.1992). For the reasons stated, this Court finds other cases more persuasive. *L.L.N. v. Chauder,* 209 Wis.2d 674, 563 N.W.2d 434 (1997); *Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis.2d 302, 533 N.W.2d 780 (1995), *cert. denied,* ── U.S. ──, 116 S.Ct. 920, 133 L.Ed.2d 849 (1996); *Swanson v. Roman Catholic Bishop of Portland,* 692 A.2d 441 (Me.1997); *Dausch v. Rykse,* 1993 WL 34873 (N.D.Ill.1993), *affirmed in part and reversed in part on other grounds,* 52 F.3d 1425 (7th Cir.1994); *Schmidt v. Bishop,* 779 F.Supp. 321 (S.D.N.Y.1991); *Roppolo v. Moore,* 644 So.2d 206 (La.App.1994).

### 3. Intentional Failure to Supervise Clergy

■ Recognizing the tort of intentional failure to supervise clergy, in contrast, does not offend the First Amendment.

The right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).

*Employment Division,* 494 U.S. at 879, 110 S.Ct. at 1600, approved in *City of Boerne v. Flores,* ── U.S. ──, ──, ──, 117 S.Ct. 2157, 2161, 2171, 138 L.Ed.2d 624 (1997) [internal quotation marks omitted].

■ This rule clearly applies to "generally applicable criminal law." *Employment Division,* 494 U.S. at 884, 110 S.Ct. at 1603. It also logically applies to intentional torts. Religious conduct intended or certain to cause harm need not be tolerated under the First Amendment. *See Cantwell,* 310 U.S. at

308, 60 S.Ct. at 905. Intent denotes "that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Restatement (Second) of Torts sec. 8A* (1965). An actor intends conduct when he "knows that the consequences are certain, or substantially certain, to result" from his act. *Id. at cmt. b.*

■ A cause of action for intentional failure to supervise clergy is stated if (1) a supervisor (or supervisors) exists (2) the supervisor (or supervisors) knew that harm was certain or substantially certain to result, (3) the supervisor (or supervisors) disregarded this known risk, (4) the supervisor's inaction caused damage, and (5) the other requirements of the Restatement (Second) of Torts, section 317 are met. This cause of action requires a supervisor. The First Amendment does not, however, allow a court to decide issues of church government—whether or not a cleric should have a supervisor. *See Kedroff,* 344 U.S. at 116, 73 S.Ct. at 154.

■ Here, giving the allegations of the petition their broadest intendment, the Gibsons have alleged that the Diocese knew that harm was certain or substantially certain to result from its failure to supervise Brewer, and thus have stated a cause of action for intentional failure to supervise clergy. The trial court erred in dismissing this claim.

### 4. Negligent Infliction of Emotional Distress

■ The Gibsons allege that, after they reported the sexual misconduct, the Diocese negligently inflicted emotional distress on them by: failing to investigate, covering up the incident, and making the statements "this happens to young men all the time," this was "an innocent pat on the butt" and they should "forgive and forget" and get on with their lives.

■ To prevail under negligent infliction of emotional distress, a plaintiff must show: (1) the defendant should have realized that its conduct involved an unreasonable risk of causing the distress, and (2) the emotional distress or mental injury must be medically

diagnosable and sufficiently severe to be medically significant. *Bass v. Nooney Co.,* 646 S.W.2d 765, 772–73 (Mo. banc 1983).

The Gibsons' claim is related not to the relationship between the Diocese and its clergy, but rather to the relationship between the Diocese and its parishioners. To determine whether the Diocese's responses to its members' claims were "reasonable," a court would inevitably judge the reasonableness of religious beliefs, discipline, and government. Applying a negligence standard to the actions of the Diocese in dealing with its parishioners offends the First Amendment.

> In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastic tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decision as binding upon them.

*Serbian E. Orthodox Diocese,* 426 U.S. at 724–25, 96 S.Ct. at 2387–88. The trial court did not err in dismissing the Gibsons' claim for negligent infliction of emotional distress against the Diocese.

### 5. Intentional Infliction of Emotional Distress

■ The Gibsons allege that the Diocese's conduct was extreme and outrageous in "allowing the assault to happen, and in covering up the incident and other such incidents by defendant Brewer and other priests, by failing to properly investigate, and in their treatment of the Gibsons after the assault." They further allege that the Diocese "acted intentionally."

■ To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. *K.G. v. R.T.R.,* 918 S.W.2d 795, 799 (Mo. banc 1996). The conduct must have been "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Warrem v. Parrish,* 436 S.W.2d 670, 673 (Mo.1969). The conduct must be "intended only to cause extreme emotional distress to the victim." *K.G.,* 918 S.W.2d at 799.

As discussed, under the First Amendment, liability for intentional torts can be imposed without excessively delving into religious doctrine, polity, and practice. *See Cantwell,* 310 U.S. at 307–08, 60 S.Ct. at 904–05. However, the Gibsons have failed to state a claim. Intentional infliction of emotional distress requires not only intentional conduct, but conduct that is intended only to cause severe emotional harm. *K.G.,* 918 S.W.2d at 799. The Gibsons' allegations do not support the inference that the Diocese's sole purpose in its conduct was to invade the Gibsons' interest in freedom from emotional distress. *See id.* at 799–800. The trial court did not err in dismissing the Gibsons' claim.

### 6. Independent Negligence of the Diocese

■ The Gibsons allege several acts of negligence by the Diocese: (1) failing to have a policy to prevent sexual abuse of minors, (2) concealing unlawful sexual acts and abuse by failing to educate and accurately inform the public, (3) ignoring and failing to investigate complaints, (4) trying to silence claims and prevent members and the public from discovering priests accused of sexual misconduct, and (5) failing to evaluate the propensity of priests to engage in improper sexual conduct.

■ To establish a negligence claim, a plaintiff must show: (1) defendant had a duty to the plaintiff; (2) defendant failed to perform that duty; and (3) defendant's breach was the proximate cause of the plaintiff's injury. *Martin v. City of Washington,* 848 S.W.2d 487, 493 (Mo. banc 1993).

■ Whether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it. *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976). In order to determine how a

"reasonably prudent Diocese" would act, a court would have to excessively entangle itself in religious doctrine, policy, and administration.

> The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, ... and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it.

*Serbian,* 426 U.S. at 711, 96 S.Ct. at 2381, quoting *Watson,* 80 U.S. at 728–29. Church members give their "implied consent" to be "subject only to such appeals as the organism itself provides for." *Id.* The trial court did not err in dismissing the claims of independent negligence by the Diocese.

### IV.

The appeal and cross-appeal involving Brewer's liability are dismissed. The dismissal of the claim of intentional failure to supervise against the Diocese is reversed, but the remainder of the judgment dismissing all other counts against the Diocese is affirmed. The case is remanded for proceedings consistent with this opinion.

LIMBAUGH, ROBERTSON, COVINGTON, WHITE and HOLSTEIN, JJ., and FLANIGAN, Senior Judge, concur.

PRICE, J., not sitting.