

# In the Missouri Court of Appeals
## Western District

AHMED SALAU,                          )

                  Appellant,    )

v.                             )        **WD76305**

                             )        FILED: June 3, 2014

BRADY J. DEATON, et al.,         )

                  Respondents.  )

## APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
### THE HONORABLE KEVIN CRANE, JUDGE

### BEFORE DIVISION FOUR - JAMES E. WELSH, CHIEF JUDGE, PRESIDING, LISA WHITE HARDWICK, JUDGE AND KEVIN HARRELL, SPECIAL JUDGE

Ahmed Salau appeals the circuit court's order denying his motion for a preliminary injunction against Brady J. Deaton, Chancellor of the University of Missouri; Catherine J. Scroggs, Vice-Chancellor of the University of Missouri; and Donnell Young, Senior Coordinator, Office of Student Conduct, University of Missouri (collectively, "Respondents"). Salau sought to preliminarily enjoin Respondents and "any other persons who are acting or have acted in concert with any of them" from: (1) holding a formal hearing on allegations of misconduct against him and (2) making any decision adverse to his status as a student and research assistant at the University.

On appeal, Salau contends he was entitled to a preliminary injunction because the University's notice of the hearing was deficient, the hearing violated his Fifth Amendment right against self-incrimination, and the University did not have an attorney

present to advise the Student Conduct Committee during the hearing. Salau further argues that the court erred in consolidating the preliminary injunction with a hearing on the merits pursuant to Rule 92.02(c)(3). Because the circuit court's denial of Salau's request for a preliminary injunction was not a final judgment and, therefore, was not appealable, we dismiss the appeal.

FACTUAL AND PROCEDURAL HISTORY

In September 2012, Young notified Salau of possible violations of the University's student conduct rules and regulations. Specifically, Young informed Salau that he was alleged to have provided alcohol to an underage University student, including at a time when she was already drunk, and then to have engaged in nonconsensual sex with her. Pursuant to the University's policies and procedures, Salau had an informal meeting with Young to discuss the allegations.

During the informal meeting, Salau admitted that he had provided the underage student with alcohol and that he had had sex with her, but he claimed that the sex was consensual. Salau told Young that he would provide him with additional information in a few days. When Salau failed to provide the additional information, Young notified him in a letter dated October 3, 2012, that he was expelled from the University. The letter also informed Salau that, if he chose not to accept Young's informal disposition decision to expel him, he would have a formal hearing before the Student Conduct Committee. Salau chose not to accept the decision, so his formal hearing before the Student Conduct Committee was set for November 12, 2012.

In the weeks leading up to the formal hearing, Salau and his counsel met with Young in person and exchanged emails with him regarding the original allegations of

conduct violations and several additional allegations of conduct violations that had been brought to Young's attention. When Salau and his counsel asked that the formal hearing be continued to allow them time to contact witnesses, the Student Conduct Committee Chair agreed to continue the hearing to November 28, 2012.

On November 12, 2012, Young sent Salau notices of all of the student conduct violations alleged against him. At the request of Salau's counsel, Young prepared a detailed account of each alleged incident and made it available for Salau or his counsel to pick up by 5:00 p.m. on November 15, 2012. When neither Salau nor his counsel picked up the information, Young mailed it to them, and they received it on November 19, 2012. Two days before the formal hearing, Salau requested another continuance to allow him "additional preparation time." The Student Conduct Committee Chair denied his request. The day before the hearing, Salau renewed his request for a continuance, and the Student Conduct Committee Chair again denied it.

Approximately three hours before the formal hearing, Salau's counsel requested a continuance, which was denied. At some point that day, Salau filed a *pro se* motion for a preliminary injunction against Respondents in the Boone County Circuit Court. In his motion, he asked that the court forbid, bar, and enjoin Respondents and "any any other persons who are acting or have acted in concert with any of them" from holding the formal hearing and from "making any decision adversarial against [his] status as a student and research assistant" at the University until further order of the court. Salau also requested "such further orders and relief as the court deems just and proper."

The Student Conduct Committee proceeded with Salau's formal hearing on the afternoon of November 28, 2012. Salau's counsel arrived seven minutes into the

hearing, while Salau arrived fifteen minutes into the hearing. When Salau arrived, he asked for a recess to speak to his counsel. After their conversation, Salau's counsel informed the Student Conduct Committee that Salau had terminated his representation. Salau's counsel then left. After his counsel left, Salau asked for a continuance because he did not have counsel to represent him and he believed his Fifth Amendment rights were being violated. The Student Committee voted to deny the continuance request. Salau walked out of the hearing. The Student Conduct Committee proceeded with the formal hearing by questioning witnesses, receiving evidence, and voting on findings and sanctions.

On November 30, 2012, the Student Conduct Committee sent a letter to Salau notifying him that the Committee found that he had violated the University's student conduct rules and regulations in five separate cases. In one of the five cases, the Committee determined that an official warning, disciplinary probation, and counseling were appropriate sanctions, but for the remaining four cases, the Committee expelled him from the University.

On December 7, 2012, the circuit court held a hearing on Salau's motion for a preliminary injunction. At the beginning of the preliminary injunction hearing, the court noted that the Student Conduct Committee hearing had already taken place and asked Salau what he was seeking to enjoin. Salau responded that he was seeking to enjoin Respondents "from making any decision that's adversary [sic] to my status as a student and research assistant." When the court asked him if a decision was reached after the Student Conduct Committee hearing, Salau acknowledged that he had been expelled from the University.

4

Respondents then asked that the court consolidate Salau's request for a preliminary injunction with a hearing on the merits for a permanent injunction. The court advised Salau that a preliminary injunction was not a final decision and asked him why he did not want the court, at that time, to make a decision on the merits as to whether Respondents should be "enjoined from maintaining their decision that [he is] disconnected from the University." Salau explained that, because Chancellor Deaton could reverse the Student Conduct Committee's decision in his administrative appeal, which would render a hearing on the merits for a permanent injunction unnecessary, he wanted to refrain, at that time, from having the full hearing on the merits.

The court then heard evidence about the notice provided to Salau and the conversations, letters, and email exchanges that Young and the Student Conduct Committee Chair had with Salau and his counsel before the Student Conduct Committee's formal hearing. While there was general testimony about what transpired at the hearing, namely, that Salau and his counsel appeared and left at the beginning of the hearing and that the hearing proceeded in Salau's absence, there was no testimony concerning the substance of the evidence presented during the Student Conduct Committee's formal hearing.

At the end of closing arguments, Respondents' counsel noted that Salau still had a right to appeal the Student Conduct Committee's decision to Chancellor Deaton, and Respondents again asked that the court order a trial of the action on the merits and consolidate the preliminary injunction hearing with the trial on the merits pursuant to Rule 92.02(c)(3). Rule 92.02(c)(3) provides:

> Consolidation With Hearing on the Merits. At any time the court may order the trial of the action on the merits to be advanced and consolidated with

5

the hearing of the application for a preliminary injunction. Any evidence received upon an application for a preliminary injunction admissible at the trial on the merits becomes part of the trial record and need not be repeated at the trial. This Rule 92.02(c)(3) shall be so construed and applied to preserve any party's right to trial by jury.

Salau objected, arguing that he wanted to bring his counsel and present additional evidence at the "actual hearing." The court read Rule 92.02(c)(3) to the parties and explained that "all 92.02(c)(3) does is preserve what we put out so far," making it unnecessary to repeat the evidence at a later trial on the merits, and that the rule would not preclude Salau from putting on additional evidence at a later trial. The court further advised that Rule 92.02(c)(3) preserved any party's right to a trial by jury. Lastly, the court explained, "A further trial with respect to a decision made subsequent to this court's ruling on a preliminary injunction would solely be on any remaining merits that may exist." The court noted that, before such a trial could be held, Salau would be "required to exhaust all remedies below." Salau responded that he had filed an appeal of the Student Conduct Committee's decision to Chancellor Deaton.

The court then stated that it was "prepared to rule on what [it had] in front of [it] today." The court ruled that Salau's "motion for preliminary injunction as consolidated with hearing on merits under Rule 92.02(c)(3) is hereby denied." Salau asked the court to certify its ruling for appeal, so the court stated, on the record and in its docket entry, "This is a final judgment for any appellate purpose."

Salau appealed to this court. We dismissed the appeal after finding that there was no judgment in writing, signed by the judge, and denominated a "judgment." *Salau v. Deaton*, No. WD75918. Salau went back to the circuit court and obtained a

6

document, signed by the judge, stating: "The ruling on 12/07/2012 is a final judgment. The preliminary injunction sought is denied." Salau filed this appeal.

APPEALABILITY OF ORDER DENYING PRELIMINARY INJUNCTION

Respondents filed a motion to dismiss this appeal for lack of an appealable judgment. Respondents contend that, despite the court's designating its order as a "final judgment," the order was interlocutory because it denied only Salau's request for a preliminary injunction and left the matter pending for final disposition.

There are three phases in an injunction proceeding: (1) a temporary restraining order granted with or without notice or a hearing; (2) a preliminary injunction granted after notice and a hearing; and (3) a permanent injunction granted after a final disposition on the merits of the case. *Pomirko v. Sayad*, 693 S.W.2d 323, 324 (Mo. App. 1985). Temporary restraining orders and preliminary injunctions "merely seek to maintain the status quo between the parties and therefore are not final judgments on the merits." *Id.* Consequently, the denial of a request for a temporary restraining order or a preliminary injunction is interlocutory in nature and is not appealable. *Id.* at 324-25; *Furniture Mfg. Corp. v. Joseph*, 900 S.W.2d 642, 646 (Mo. App. 1995). See also *Coursen v. City of Sarcoxie*, 124 S.W.3d 492, 498 (Mo. App. 2004).

Salau first argues that the order denying his request for a preliminary injunction was appealable because the court, at his request, designated it as a "final judgment." The circuit court's designation "that its order is final and appealable is not conclusive." *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). Instead, "[i]t is the content, substance, and effect of the order that determines finality and appealability." *Id.*

The content and substance of the court's order in this case clearly indicate that the court intended simply to deny Salau's request for a preliminary injunction. In the order, the court referred exclusively to Salau's request for a preliminary injunction and expressly denied it -- and nothing else.

Nevertheless, Salau asserts that the effect of the court's order was to "dispose[ ] of any and all issues in the case leaving nothing for future consideration." He argues that, by consolidating the hearing on the preliminary injunction with a trial on the merits pursuant to Rule 92.02(c)(3), the court precluded him from having a later trial on the merits and decided, instead, to issue a final decision on the merits denying him permanent injunctive relief.

The record plainly refutes Salau's claims. When the court granted Respondents' request to consolidate the hearing on the preliminary injunction with a trial on the merits, the court made very clear its view that "all 92.02(c)(3) does I think is to preserve what we put out so far. It doesn't preclude [Salau] from putting on additional evidence at a jury trial. . . . I think it just doesn't mean you'd repeat it all." In response, Salau stated, "That's correct." The court reiterated these sentiments later, as it told the parties that a "further trial with respect to a decision made subsequent to this court's ruling on a preliminary injunction would be solely on any remaining merits that may exist." The court went to great lengths to explain to Salau that it was consolidating the hearing on the preliminary injunction with a trial on the merits solely to preserve the evidence already offered so that it would not have to be repeated in a later trial on the merits for permanent injunctive relief. The court also noted, and Respondents agreed, that this later trial on the merits could not take place until after Salau's administrative remedies

8

had been exhausted, *i.e.*, after Chancellor Deaton issued his decision in Salau's administrative appeal.  Thus, the effect of the court's order was to deny Salau only preliminary, but not permanent, injunctive relief.[1]

### CONCLUSION

The court's order denying Salau's request for a preliminary injunction was neither final nor appealable.  Therefore, we dismiss the appeal.

LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

---

[1] We express no opinion as to whether Salau is entitled to permanent injunctive relief.