

# SUPREME COURT OF MISSOURI
## en banc

ELIZABETH BUTALA, ET AL., )
)   *Opinion issued April 6, 2021*
Appellants, )
)
v. )   No. SC98517
)
THE CURATORS OF THE UNIVERSITY )
OF MISSOURI, )
)
Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY**
The Honorable J. Hasbrouck Jacobs, Judge

PER CURIAM

Appellants, Mizzou BioJoint patients (together with their spouses, the "plaintiffs"), sued individual doctors and the curators of the University of Missouri for injuries associated with unsuccessful surgeries the BioJoint patients underwent. The plaintiffs alleged the doctors had committed several torts and alleged negligent misrepresentation and violations of the Missouri Merchandising Practices Act ("MMPA") against both the doctors and the Curators. The circuit court entered orders dismissing the Curators from each case and certified those judgments as final under Rule 74.01(b). The plaintiffs appealed.

1

The court of appeals dismissed the appeals for lack of jurisdiction, concluding the circuit court's orders were ineligible for certification under Rule 74.01(b) because they were not judgments in that they did not fully resolve at least one claim. This Court subsequently granted transfer and has jurisdiction under article V, section 10 of the Missouri Constitution. Because the circuit court's orders met the requirements of Rule 74.01(a), resolved all legal issues, and disposed of all remedies sought as against the Curators, thereby qualifying as final judgments under section 512.020(5),[1] the judgments were eligible for certification as final under Rule 74.01(b). Additionally, the circuit court's decision to certify the judgment for interlocutory appeal was not an abuse of discretion. Accordingly, the case is retransferred to the court of appeals for consideration of the merits of the plaintiffs' appeals.[2]

---

[1] All statutory references are to RSMo 2016.

[2] Neither the plaintiffs nor the Curators contend that the plaintiffs' appeals fall within this Court's exclusive appellate jurisdiction under article V, section 3 of the Missouri Constitution, and this Court – having undertaken an analysis of this question *sua sponte* – concludes it does not have exclusive appellate jurisdiction. To invoke this Court's exclusive appellate jurisdiction, the constitutional claim must be properly preserved below, properly presented in this Court, and be "real and substantial, not merely colorable." *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015) (citation omitted); *see also Mayes v. Saint Luke's Hosp. of Kan. City*, 430 S.W.3d 260, 266-69 (Mo. banc 2014). The only properly preserved and presented claims are facial challenges to sovereign immunity and section 537.600 under the procedural guarantees of the open courts provision of the Missouri Constitution. This Court has rejected similar constitutional and other challenges to sovereign immunity and related doctrines repeatedly over the years. *See, e.g.*, *Fisher v. State Highway Comm'n of Mo.*, 948 S.W.2d 607, 611 (Mo. banc 1997); *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 879 (Mo. banc 1993); *Findley v. City of Kan. City*, 782 S.W.2d 393, 395-96 (Mo. banc 1990); *Winston v. Reorganized Sch. Dist. R-2*, 636 S.W.2d 324, 327-29 (Mo. banc 1982). Apart from asking that such precedents be reexamined, the plaintiffs' claims plow no new ground and are, therefore, "merely colorable."

**Background**

In February and March 2019, the plaintiffs filed eight separate lawsuits against individual doctors and the Curators. In these similarly pleaded suits, the plaintiffs asserted BioJoint surgery was advertised and marketed as a viable alternative to – and equally as successful as – artificial joint replacement surgery, even though the BioJoint surgery performed on each of the patients ultimately failed. The plaintiffs pleaded certain causes of action against only the individual doctors (e.g., medical malpractice, lost chance of recovery, and in some instances, loss of consortium), but they pleaded causes of action against both the doctors and the Curators under the MMPA and for negligent misrepresentation based on the allegedly misleading advertisements about the surgery.

The Curators moved to dismiss the plaintiffs' MMPA and negligent misrepresentation counts – all the counts pleaded against them – in each of the eight cases, asserting several grounds, including sovereign immunity. The circuit court sustained the motions and dismissed the Curators from each of the suits with prejudice. These orders were in writing, signed by the judge, and denominated "judgments of dismissal." The circuit court further certified each of these judgments as final for purposes of appeal pursuant to Rule 74.01(b), finding there was "no just reason for delay," notwithstanding that all of the plaintiffs' counts against the individual doctors, including the MMPA and negligent misrepresentation counts arising from the allegedly misleading advertisements, remained pending in the eight separate cases. The plaintiffs appealed each of these judgments, arguing the circuit court erred in interpreting the MMPA, in applying sovereign

immunity, in overruling the plaintiffs' motions for leave to amend their petitions, and in denying their constitutional claims. These eight appeals were consolidated in the court of appeals.

The court of appeals dismissed the plaintiffs' consolidated appeals for lack of jurisdiction. The court of appeals concluded the eight separate (but largely identical) orders dismissing the Curators were not eligible for certification as final for purposes of appeal under Rule 74.01(b). It reasoned that none of the dismissals fully resolved at least one claim in their respective lawsuits because the plaintiffs' remaining counts against the doctors in each suit arose from the same set of facts as the counts against the Curators. As a result, the court of appeals concluded none of these dismissals met the substantive definition of a "judgment"; therefore, none of the dismissals came within the ambit of Rule 74.01(b). This Court disagrees.

**Analysis**

Article V, section 5 of the Missouri Constitution provides that this Court may issue procedural rules but that those rules "shall not change . . . the right of appeal." As a result, the "right to appeal is purely statutory[.]" *First Nat'l Bank of Dieterich v. Pointe Royal Prop. Owners' Assoc., Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017) (quotation omitted). The legislature has set out what rulings can be appealed in section 512.020. Its only subsection applicable to this case is subsection (5), which states in relevant part:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court

having appellate jurisdiction from any . . . [f]inal judgment in the case or from any special order after final judgment in the cause[.]

To be eligible for appeal under section 512.020(5), therefore, the circuit court's ruling or order must be a final judgment. As permitted by the constitution, the Court has imposed procedural requirements in Rule 74.01 that must be met for an order to be a final judgment for purposes of section 512.020(5). Rule 74.01(a) requires that a final judgment be in writing, signed by the judge and expressly denominated a "judgment."[3] Rule 74.01(b) further requires:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.

The orders in question do not dispose of all claims in the case but instead dispose of all claims against one party, the Curators. An order that "fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim" is, in substance, a judgment. *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019).[4] The circuit court's orders in each case fully resolved all counts pleaded against the Curators and established all the rights and liabilities of the parties with respect

---

[3] As noted previously, the circuit court order in each of the underlying suits met the requirements of Rule 74.01(a).

[4] The term "claim" is sometimes used to refer to what is otherwise called a cause of action or theory of recovery, *Kilmer v. Mun*, 17 S.W.3d 545, 550 n.18 (Mo. banc 2000), while in other contexts it is used to refer to the bundle of legal theories or causes of action that may be asserted as against one party arising from a particular set of facts, *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997); *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994). Either meaning is satisfied under the facts of these cases.

to all matters pleaded against the Curators. Consequently, the circuit court's orders met the substantive definition of a judgment.

Having decided the circuit court's orders were judgments, the Court must further determine whether they are eligible to be certified under Rule 74.01(b) as "final judgments" for purposes of section 512.020(5). *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc (1997), answers that question. As *Gibson* explains, so long as a judgment resolves all legal issues and leaves open no remedies against a particular party, it can be certified as final for purposes of appeal under Rule 74.01(b). In *Gibson,* the plaintiffs sued a priest and a Catholic diocese, "alleging nine counts: battery, negligent hiring/ordination/retention, negligent failure to supervise, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of fiduciary duty, conspiracy, agency liability, and independent negligence of the Diocese." *Id.* at 243-44. The circuit court issued two judgments it determined were final and appealable, one in which some of the counts against the priest were dismissed and one in which it dismissed all counts against the diocese. *Id.* at 244. On appeal, this Court *sua sponte* examined its jurisdiction over the appeal. *Id.* It found it had appellate jurisdiction over the judgment dismissing all counts against the diocese, holding: "When one defendant, but not all defendants, is dismissed from a case, the trial court may designate its judgment as final 'for purposes of appeal'" because dismissing the defendant from the case "resolved all legal issues and left open no remedies" against the defendant. *Id.* at 245.

Because the judgment resolved all legal issues and left open no remedies against the diocese, the fact the counts against the diocese arose from the same occurrence as the

6

counts pleaded against the priest was not relevant in deciding whether the judgment disposed of a judicial unit. A judgment that disposes of all issues and remedies against at least one party *per se* disposes of a judicial unit and is a final judgment under section 512.020 without regard to whether the remaining issues and remedies arise from a distinct transaction or occurrence. The distinctness of transactions or occurrences matters only when the judgment appealed from does not resolve all legal issues and remedies against any one party. *Id.* It is only when the judgment does not resolve all legal issues and remedies related to any one party that there must be a judicial unit for appeal that arises from sufficiently distinct transactions or occurrences to be eligible for certification under Rule 74.01(b). *Id.* at 244. Accordingly, the shared occurrence in *Gibson* was relevant only in deciding whether the order in favor of the priest disposed of a judicial unit. *Id.* at 244-45.

In each of the cases consolidated in this appeal, the circuit court dismissed the Curators from the case, resolving all legal issues and leaving open no remedies in all counts against the Curators. Because the circuit court rulings resolved all legal issues and left open no remedies as against the Curators (and because they were in writing, signed by the judge and expressly denominated a "judgment"), the orders were, in substance and form, eligible to be certified for interlocutory appeal under Rule 74.01(b) as "final judgments" under section 512.020(5). *Wilson v. City of St. Louis*, 600 S.W.3d 763, 769 (Mo. banc 2020); *Gibson*, 952 S.W.2d at 245. The circuit court, exercising its discretion, certified each of the judgments as final for purposes of appeal pursuant to Rule 74.01(b), finding there was "no just reason for delay."

7

The only question that remains is whether the circuit court abused its discretion in certifying the judgments as final for purposes of appeal. Pursuant to Rule 74.01(b), a circuit court "may enter judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." If a circuit court expressly finds there is no just reason for delay and exercises its discretion under Rule74.01(b) to certify the judgment for interlocutory appeal, that decision is reviewed only for an abuse of discretion. *Wilson*, 600 S.W.3d at 771. "A ruling constitutes an abuse of discretion when it is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Cox v. Kan. City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015) (quotation omitted).

In determining whether to certify a judgment as final for purposes of appeal under Rule 74.01(b), the circuit court should consider whether approving an interlocutory appeal will: (a) aid or impede the efficient administration of justice in either the circuit court or the appellate court; (b) create undue risk of prejudice either for those who will be parties to the appeal or for those who will not; (c) create undue risk that a decision in the appeal could adversely impact future decisions on the unresolved claims that presumably will be proceeding simultaneously; (d) create undue risk that future decisions concerning the unresolved claims may adversely impact the appeal of the resolved claims; or (e) create undue risk of duplicative or unnecessary proceedings in either the appeal or the circuit

court in the event the interlocutory judgment is not affirmed. *Wilson*, 600 S.W.3d at 771-72.

In each of the underlying cases, the claim against the Curators was closely intertwined with the claim against the doctors that remains unresolved. Presumably, in each of the underlying cases, the circuit court will proceed on the unresolved claim during the appeal concerning the resolved claim. If it does not, it is difficult to perceive what increase in judicial economy – either in the circuit or appellate court – the certification was intended to promote. If the unresolved claim proceeds to trial and, afterward, the judgment on the resolved claim is not affirmed, a risk of unfair prejudice and inconsistent outcomes will result. This risk exists to some extent with all interlocutory appeals, of course, but the nature of the circuit court's decision to enter judgment for the Curators on the threshold question of sovereign immunity increases this risk if – in the end – it is determined that the circuit court erred in doing so (a question on which this Court neither holds nor expresses any opinion). On the other hand, the fact the circuit court's judgments for the Curators were based on sovereign immunity – an issue that does not impact the plaintiffs' unresolved claims against the doctors – decreases the risks that an appellate decision regarding the Curators on this issue will undercut intervening decisions made concerning the claims against the doctors, or vice versa.

In the end, certification of the judgments for the Curators creates some risk of unfair prejudice to some parties (including the Curators), but the particular circumstances of this case ensure these risks are as limited as they can be. Reasonable minds could differ, therefore, as to whether the judgments in this case (which were, as a matter of law, eligible

for certification) should have been certified as final under Rule 74.01(b). But this is the antithesis of an abuse of discretion. Accordingly, the circuit court did not abuse its discretion in certifying its judgment as final for the purposes of appeal.

## Conclusion

Because the circuit court's orders resolved all legal issues and disposed of all remedies sought against the Curators, they were judgments that became final for purposes of appeal when certified under Rule 74.01(b). The case is retransferred to the court of appeals for consideration of the merits of the plaintiffs' appeals. *See D.E.G. v. Juvenile Officer of Jackson Cnty.*, 601 S.W.3d 212, 220 n.15 (Mo. banc 2020) ("When this Court is called upon to determine the finality or appealability of judgments, it has made that determination and then regularly retransferred to the court of appeals for a determination of the underlying merits.").

Draper, C.J., Wilson, Russell, Powell,
Breckenridge, Fischer, JJ., and
Stith, Sp.J., concur.

10