**P.S. and R.S., Plaintiffs/Appellants,**

v.

**PSYCHIATRIC COVERAGE, LTD.,
Defendant/Respondent.**

**P.S. and R.S., Plaintiffs/Cross–
Respondents,**

v.

**PSYCHIATRIC COVERAGE, LTD.,
Defendant/Cross–Appellant.**

Nos. 64386, 64577.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 13, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 24, 1994.

Application to Transfer Denied
Dec. 20, 1994.

Mary Coffey, John J. Frank Partnership, St. Louis, for appellants.

Kenneth W. Bean, Roger K. Rea, and Jan E. Dodd, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, for respondent.

AHRENS, Judge.

This is an appeal and cross appeal in a malpractice action brought by plaintiffs P.S. and R.S. against defendants Dr. Asiz Bouzrara and his employer, Psychiatric Coverage, Ltd. (employer). Plaintiffs challenge the trial court's application of § 538.230.2 RSMo1986[1] to the judgment in finding that employer was not jointly and severally liable with Dr. Bouzrara. In its cross appeal, employer claims the trial court erred in finding employer vicariously liable for Dr. Bouzrara's negligence and also claims instructional error. We reverse and remand.

Dr. Bouzrara is an unlicensed psychologist who works at employer's clinic. The principal owner of employer, Psychiatric Coverage, Ltd., is Dr. Fazil M. Yasin, a medical doctor and a licensed practicing psychiatrist. In April, 1994, plaintiff P.S. began seeing Dr. Bouzrara for therapy because she was expe-

---

1. All statutory references are to RSMo1986 un-    less otherwise stated.

riencing panic attacks. At first, plaintiff P.S.'s sessions with Dr. Bouzrara seemed normal. However, Dr. Bouzrara soon began questioning plaintiff P.S. about the sexual details of her life, claiming her sexual frustration could be causing the panic attacks. Plaintiff P.S. visited Dr. Bouzrara on a weekly basis from April 18, 1989 through September 2, 1989.

During the session on June 7, 1989, the first sexual encounter between Dr. Bouzrara and plaintiff P.S. occurred. Plaintiff P.S. told Dr. Bouzrara that she had a "crush" on him. Dr. Bouzrara initially informed plaintiff P.S. that it was normal for her to feel that way, but it would be unethical and immoral for them to have any kind of personal relationship. Before the session ended, however, Dr. Bouzrara began touching her. From June, 1989, through September, 1989, plaintiff P.S. and Dr. Bouzrara had numerous sexual encounters during therapy sessions and away from the clinic.

In their action against defendants, plaintiffs alleged Dr. Bouzrara was negligent by becoming sexually involved with plaintiff P.S. under the guise of therapy. Plaintiffs further alleged employer was vicariously liable for Dr. Bouzrara's negligence and also liable for negligently hiring Dr. Bouzrara. The jury awarded plaintiff P.S. $210,000.00 in damages and plaintiff R.S. $50,000.00 for loss of consortium. In assessing the liabilities, the jury found Dr. Bouzrara 60% at fault, employer 35% at fault, and plaintiff P.S. 5% at fault.[2] In addition, the jury found employer vicariously liable for the percentage of fault assessed against Dr. Bouzrara.

At the center of this appeal is the trial court's finding that employer is vicariously liable for Dr. Bouzrara's negligence under the theory of *respondeat superior*. Employer claims the trial court erred in denying employer's motions for directed verdict and judgment notwithstanding the verdict because employer is not vicariously liable as a matter of law. Employer argues that Dr. Bouzrara's intentional sexual misconduct was not psychological therapy and went beyond Dr. Bouzrara's scope of employment as a therapist. We agree.

Missouri courts have often stated the general principles governing cases of *respondeat superior*. Under this doctrine, an employer is held liable to a third person for a tort committed by the employee, even though not directed, commanded or expressly authorized by the employer, if the employee committed such act while engaged in an activity falling within the scope of the employee's authority or employment. *Maryland Casualty Co. v. Huger*, 728 S.W.2d 574, 579 (Mo. App.1987). The principles set forth in cases of *respondeat superior* focus on determining whether the act in question was committed within the employee's scope and course of employment. In applying these principles, courts examine the facts and circumstances of each particular case and no single principle is conclusive. *Noah v. Ziehl*, 759 S.W.2d 905, 909–10 (Mo.App.1988).

Whether an act was committed within the scope and course of employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or interest of the employer. *Id.* at 910. If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business. *Id.*

The sexual encounters complained of in this case occurred at employer's clinic, in public areas, in Dr. Bouzrara's car, and at Dr. Bouzrara's apartment. Plaintiff P.S. testified that Dr. Bouzrara became sexually stimulated while fondling and kissing her. The evidence revealed that plaintiff P.S. went to Dr. Bouzrara's apartment and showered with him and lay naked in his bed with him. Plaintiff P.S. testified that she did not believe this behavior was part of therapy. Several experts also testified that this type of behavior is not therapy. In addition, sexual relations with patients violates the ethical codes of both the American Psychiatric Association and the American Psychological Association.

---

**2.** Dr. Bouzrara does not appeal the judgment against him.

Dr. Bouzrara was hired by employer to provide therapy to patients at employer's clinic. Regardless of whether sexual misconduct takes place during or in connection with therapy, it is not the general kind of activity a therapist is employed to perform. The sexual encounters between plaintiff P.S. and Dr. Bouzrara resulted from purely private and personal desires. The acts did not occur as part of any therapy program and they were not intended to further employer's business. Dr. Bouzrara was not acting within the scope of his employment when he engaged in sexual relations with plaintiff P.S.

Much of plaintiffs' case centers around the transference phenomenon which can develop between a therapist and a patient.[3] Plaintiffs rely on the Missouri Supreme Court decision in *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo. banc 1968), which discusses the transference phenomenon in the context of a malpractice insurance case. The court in *Zipkin* was asked to interpret a clause in an insurance contract which stated that the insurer would defend and pay damages resulting from a claim "based on professional services rendered or which should have been rendered during the term of the policy." *Id.* at 754. Although the court discussed the psychiatrist's mishandling of the transference phenomenon, it specifically stated that it was limiting its holding to whether the claim was within the coverage of the insurance policy. *Id.* at 762.

The issue of whether an employer is liable under *respondeat superior* for an employee therapist's sexual misconduct is one of first impression for Missouri courts. We note, however, several jurisdictions have examined this issue and found the employer not liable.[4] We hold that employer is not liable under *respondeat superior* for damages resulting from Dr. Bouzrara's sexual relations with

plaintiff P.S. because he was not acting within the scope and course of his employment as a therapist. We conclude the trial court erred in denying employer's motions for directed verdict and judgment notwithstanding the verdict because employer is not vicariously liable as a matter of law.

Additionally, employer claims the trial court erred in submitting a modified version of MAI 13.03 [1990 Revision] which defines the scope of employment in situations where the dual purpose doctrine applies. Employer argues MAI 13.02 [1978 Revision] stated the proper scope of employment. We have found, as a matter of law, that Dr. Bouzrara's acts of intentional sexual misconduct were not done in the furtherance of employer's business. Therefore, Dr. Bouzrara's acts were beyond the scope of his employment as defined by either MAI 13.02 or MAI 13.03. This point is moot.

■ Finally, employer argues that plaintiffs' verdict director for negligent hiring, Instruction 10, failed to instruct the jury to find that a particular act or omission caused plaintiffs' injuries. Employer claims Instruction 10 gave the jury a "roving commission" to speculate and determine in what manner employer negligently hired Dr. Bouzrara.

Instruction 10 provided:

In your verdict, on the claim of plaintiff P.S. for negligence against defendant [employer], you must assess a percentage of fault to defendant [employer] whether or not plaintiff P.S. was partly at fault if you believe:

First, Defendant [employer] hired Asiz Bouzrara; and

Second, defendant [employer] was thereby negligent; and

---

**3.** The transference phenomenon occurs when "[i]nappropriate emotions, both hostile and loving, directed toward the physician are recognized by the psychiatrist as constituting a special aspect of the patient's neurosis—the transference. The psychiatrist looks for manifestations of the transference, and is prepared to handle it as it develops." *Zipkin v. Freeman*, 436 S.W.2d 753, 755 n. 1 (Mo. banc 1968) (quoting Melvin S. Heller, M.D., *Some Comments to Lawyers on the Practice of Psychiatry*, 30 Temp.L.Q. 401, 402).

**4.** *See e.g., Andrews v. United States*, 732 F.2d 366 (4th Cir.1984); *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1990); *Bunce v. Parkside Lodge of Columbus*, 73 Ohio App.3d 253, 596 N.E.2d 1106 (1991); *Birkner v. Salt Lake County*, 771 P.2d 1053 (Utah 1989). *But see Simmons v. United States*, 805 F.2d 1363 (9th Cir.1986); *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344 (Alaska 1990).

Third, such negligence directly caused or directly contributed to cause damage to plaintiff P.S.

This instruction is a modification of MAI 21.01 [1988 Revision] (the verdict director for actions against health care providers in negligence) and MAI 19.01 [1986 Revision] (the verdict directing modification when there are multiple causes of damage when comparative fault is submitted).

■■■ If a Missouri Approved Instruction is applicable to a particular case, its use is mandatory. Rule 70.02(b) (1993). *Karnes v. Ray,* 809 S.W.2d 738, 740 (Mo.App.1991). Approved instructions, however, do not cover every factual situation and there may not be an MAI appropriate in a particular case. *Karnes,* 809 S.W.2d at 740. Rule 70.02(e) (1993) allows modification of existing MAIs and not-in-MAIs in situations where there is not an appropriate MAI. *Id.* The test of a modified MAI is whether it follows the substantive law and can be readily understood by the jury. *Id.*

■■■ A plaintiff's verdict directing instruction must require the jury to find all contested ultimate issues or elements necessary to plaintiff's case. *Id.* at 741. In an action for negligence, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, the failure of defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's failure. *Id.*

Instruction 10 is a modified MAI which fails to set out what constituted employer's negligence. MAI 21.01 requires the plaintiff to set out the act or omission complained of in the verdict director. The act complained of in Instruction 10 is that "defendant [employer] hired Asiz Bouzrara." Merely hiring an employee does not necessarily constitute negligence, and whether it was negligence for employer to hire Asiz Bouzrara depends on the facts of the case. These facts were not provided in the instruction. *See Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224, 226 (Mo. banc 1994).

■■■ Plaintiffs raise two arguments in support of the use of Instruction 10 at trial. First, plaintiffs claim employer cannot object to an instruction on appeal without offering an alternative instruction at trial. Rule 70.03 (1993) states that "[s]pecific objections to instructions shall be required in motions for new trial unless made at trial." Employer made specific objections both at trial and in its motion for new trial to the use of Instruction 10 stating that it failed to state the negligent act complained of and gave the jury a "roving commission" to find employer negligent. Employer has met the requirements set forth in Rule 70.03 (1993).

Plaintiffs also claim that employer cannot raise on appeal an error which its own conduct created. Plaintiffs argue employer objected to their submitted instruction phrasing the first element as "defendant hired an unlicensed psychologist." The trial court determined that hiring an unlicensed psychologist was not an act of negligence because the licensing regulations did not create a private cause of action. This determination was not appealed. As such, we do not consider employer's objection to be invited error.

Instruction 10 did not provide the jury with specific acts or omissions complained of to enable the jury to find employer negligent. Instead, it gave the jury a "roving commission" and enabled the jury to find employer negligent for any number of imaginable acts and omissions. This resulted in prejudicial error. We therefore reverse the judgment and remand for a new trial.

■■ In their related points on appeal, plaintiffs claim the trial court erred in applying § 538.230.2 to amend its judgment to find employer was not jointly liable for the full amount of plaintiffs' damages. First, plaintiffs argue employer is not a Chapter 538 RSMo health care provider and therefore cannot enjoy the limitation on liability as provided by that chapter. Missouri's medical malpractice statute, Chapter 538 RSMo, was passed as part of Missouri's tort reform legislation. The chapter established, among other things, a limit on the amount of non-economic damages that could be imposed in a medical malpractice case, a requirement for early filing of an affidavit by a health care provider certifying the merit of the case, a provision on how damages should be paid,

and, at issue here, § 538.230, procedures for apportioning fault among defendants.

§ 538.230.2 provides, in pertinent part, as follows:

2. The court shall determine the award of damages to each plaintiff in accordance with the findings, ... and enter judgment against each party liable on the basis of the rules of joint and several liability. However, notwithstanding the provisions of this subsection, any defendant against whom an award of damages is made shall be jointly liable only with those defendants whose apportioned percentage of fault is equal to or less than such defendant.

Plaintiffs assert the trial court erred in applying this provision to find that employer was not jointly and severally liable with Dr. Bouzrara for the full amount of plaintiffs' damages because the statute only applies to health care providers and employer is not a health care provider within the meaning of the statute. We disagree.

In Chapter 538, each of the substantive provisions, including the provision at issue here, begins: "In any action against a health care provider for damages for personal injury or death arising out [on account] of the rendering of or [the] failure to render health care services...." §§ 538.210, .215, .220, .225, .230. The definitional section of the chapter, § 538.205, provides:

As used in sections 538.205 to 538.230, the following terms shall mean: (4) "Health care provider", any physician, hospital, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate[.]

In arguing a strict statutory construction approach, plaintiffs assert that a corporation is not licensed or certified to provide health care services and cannot be a health care provider under Chapter 538. We disagree. A professional corporation which provided health care services by licensed practitioners has been recognized as a health care provid-

er by the Missouri Supreme Court. In *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503 (Mo. banc 1991), our Missouri Supreme Court upheld the dismissal of a medical malpractice claim against a professional corporation and several other health care providers for failure to comply with the statutory requirement that the plaintiffs file an affidavit from a health care provider asserting the merit of their action. *Id.* at 505; § 538.225.

We are further persuaded by the public policy grounds for finding that a professional corporation providing health care services through licensed practitioners is a health care provider for the purposes of Chapter 538. In *Mahoney*, the Missouri Supreme Court stated: "It is readily understood from the history and text of *Chapter 538* that the enactment is a legislative response to the public concern over the increased cost of health care and the continued integrity of that system of essential services." *Mahoney*, 807 S.W.2d at 507. To give effect to the legislative intent of Chapter 538, the protections of the chapter must be provided to the health care providers as listed under § 538.205(4), as well as to "any other person or entity that provides health care services under the authority of a license or certificate." § 538.220(4). Consistent with the Missouri Supreme Court's decision in *Mahoney*, we interpret the statute to include professional corporations which provide health care services by licensed practitioners. Point denied.

Second, plaintiffs assert that even if employer is a health care provider, the trial court erred in applying § 538.230.2 to find that employer was not jointly liable with Dr. Bouzrara for the full amount of plaintiffs' damages (after reduction for plaintiffs' comparative fault), because the jury found employer was jointly and severally liable for the acts of its servant, Dr. Bouzrara, committed within the course and scope of employment. As we have previously held as a matter of law that employer is not vicariously liable for Dr. Bouzrara's acts of intentional sexual misconduct, plaintiffs' argument is moot. Point denied.

Next, we must decide whether reversal and remand on the issue of employer's negligence requires retrial of other issues. Our supreme court has held that "[e]specially in a comparative fault case, a determination of damages cannot survive independent of the accompanying determination of liability." *Barlett v. Kansas City,* 854 S.W.2d 396, 403 (Mo. banc 1993). Similarly, the issues of apportionment of fault and liability are so interrelated that apportionment of fault between the parties cannot, likewise, survive independent of the accompanying determination of liability. Defendant Bouzrara has not appealed the judgment, and plaintiff has not appealed the issues of damages or apportionment of fault. However, the attributes of our system of comparative fault give rise to problems where there is a partial reversal and the comparative fault of multiple defendants is at issue. We conclude that to avoid prejudice to any of the parties on retrial, and in keeping with the rule outlined in *Barlett,* the interests of justice require a new trial as to all parties and all issues. We reverse the judgment of the trial court and remand for a new trial.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.