520 F.Supp.2d 1124 (2007)
JOHN DOE CS, Plaintiff,
v.
The CAPUCHIN FRANCISCAN FRIARS, d/b/a The Capuchin Franciscan Friars Province of Mid-America, St. Patrick Friary, Defendant.
No. 4:07cv0468 TCM.
United States District Court, E.D. Missouri, Eastern Division.
October 11, 2007.
*1125 *1126 *1127 *1128 Kenneth M. Chackes, Chackes and Carlson, St. Louis, MO, Patrick Noaker, Jeff Anderson and Associates, P.A., St. Paul, MN, for Plaintiff.
Eric M. Trelz, Bryan D. Lemoine, Serena Shante' Wilson-Griffin, Polsinelli and Shalton, P.C., St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
THOMAS C. MUMMER T, III, United States Magistrate Judge.
This matter[1] is before the Court[2] on the motion of defendant, The Capuchin Franciscan Friars, doing business as, the Capuchin Franciscan Friars Province of Mid-America, St. Patrick Friary ("Defendants"), to dismiss all but one of the counts in the complaint filed by John Doe CS ("Plaintiff"). [Doc. 10]

Background
The following allegations are, for purposes of the instant motion, assumed to be true.
Defendants are a world-wide Roman Catholic religious order of priests and conduct business in Missouri. (Compl. ¶ 5.) They and their agents and employees select and assign clergy, supervise clergy activities, exercise authority over members of their Order, and maintain "the wellbeing of its members attending schools and parishes which are owned and/or operated" by Defendants. (Id.) One such employee and member was, at all times relevant, Father Thaddeus Posey. (Id. ¶ 1.) Father Posey taught at Cardinal Ritter Preparatory High School in St. Louis, Missouri ("Cardinal Ritter"). (Id. ¶ 6.) When serving in this capacity, Father Posey sexually abused Defendants' minor parishioners. (Id. ¶ 1.) One such parishioner was Plaintiff, a student at Cardinal Ritter from approximately late 1982 through early 1984. (Id. ¶¶ 6, 14.) At the time of the sexual abuse, Father Posey "falsely represented to Plaintiff that Fr. Posey was providing spiritual counseling, comfort, mentor [sic], and advice to Plaintiff." (Id. ¶ 16.) Father Posey and Defendants portrayed themselves to Plaintiff as counselors and instructors on spiritual, moral, and ethical matters; consequently, Defendants had domination and influence over Plaintiff. (Id. ¶ 12.) "Plaintiff trusted and relied upon Defendant[s] to nurture and protect him while he was in Defendants' care and custody." (Id.) Moreover, "[t]he power imbalance between Defendant[s] and Plaintiff increased the boy's vulnerability to Fr. Posey." (Id.)
*1129 "At all times material[,] [Father] Posey was under the direct supervision, employ and control of Defendant[s][,]" as was Cardinal Ritter. (Id. ¶ 16,10.) He was hired, supervised, trained, and paid by Defendants. (Id. ¶ 7.) He acted upon the authority of Defendants, at their request, or with their permission. (Id.) His conduct at issue "was undertaken while in the course and scope of his employment with Defendantf[s]." (Id. ¶ 11.) Defendants also "ratified the wrongful conduct . . . by failing to report it to law enforcement authorities, prospective parishioners, current parishioners, their families, victims, and the public." (Id. 21.)
In Count I of his complaint, titled "Child Sexual Abuse and/or Battery," Plaintiff alleges that Father Posey was acting in the course and scope of his employment with Defendants when he sexually abused Plaintiff and that Defendants ratified this abuse and aided and abetted Father Posey in committing the abuse, in concealing the abuse, and in avoiding a criminal investigation. (Id. ¶ 23.)
In Count II, titled "Breach of Fiduciary Duty," Plaintiff alleges that Defendants held a position of empowerment over Plaintiff and held Cardinal Ritter out to be a safe and secure institution and themselves and Father Posey to be shepherds and leaders of the Roman Catholic Church. (Id. ¶¶ 27-28.) "This empowerment prevented the then minor Plaintiff from effectively protecting himself and Defendant[s] thus entered into a fiduciary relationship with Plaintiff." (Id. ¶ 28.) As a result of this fiduciary relationship, Defendants had certain duties to Plaintiff, including a duty of disclosure, and breached these duties by, inter alia, using his "dependency and innocence as a child to prevent him from recognizing that the abuse was wrongful" and by "[k]eeping a known pedophile in the presence of children," such as Plaintiff (Id. ¶¶ 30-31.)
Plaintiff alleges in Count III, titled "Fiduciary Fraud and Conspiracy to Commit Fiduciary Fraud,' the earlier-described fiduciary relationship between Defendants and Plaintiff and the duty of disclosure owed by Defendants to Plaintiff was breached when Defendants used "Plaintiff's dependency and innocence as a child to prevent him from recognizing that me abuse was wrongful." (Id. ¶ 38.) Defendants enforced the secrecy about the sexual abuse "and/or" taught Plaintiff that the abuse "was normal or necessary to the relationship." (MO) The existence of past, present, or future sexual misconduct by Father Posey and Defendants's other agents was a consideration in Plaintiffs and his family's decision on whether he should attend Cardinal Ritter. (Id. ¶ 39.) Defendants knowingly failed to disclose Father Posey's sexual misconduct. (Id. ¶¶ 41-42.) ". . . Defendant[s] and the Roman Catholic Archdiocese of St Louis and the Archbishop of the Archdiocese of St Louis, in conceit with one another, and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would misrepresent, conceal, or fail to disclose information relating to the sexual misconduct of Defendant[s]' agents. By so concealing, Defendant[s] committed at least one act in furtherance of the conspiracy." (Id. ¶ 44.)
In Count IV, titled "Fraud and Conspiracy to Commit Fraud," Plaintiff alleges that Defendants knew, or should have known, of the sexual misconduct of their agents, including Father Posey, and concealed or failed to disclose such information to Plaintiff. (Id. ¶¶ 48-50.) The threat of sexual misconduct was a material factor in Plaintiffs and his family's decision whether he was to attend Cardinal *1130 Ritter. (Id. ¶ 51.) As in Count III, Defendants conspired with the Archdiocese and the Archbishop. (Id. ¶ 52.)
In Count V, titled "Intentional Infliction of Emotional Distress," Plaintiff also alleges that Defendants intentionally failed to supervise, remove, or sanction Father Posey after learning of his previous sexual abuse to other children, and continued to place Father Posey in a position of authority over children. (Id. ¶ 56.) Although they knew Father Posey was unsuitable for his position, they failed to review and monitor his performance, to confront him, and to sanction him about "known irregularities in his employment," e.g., taking young children on trips and to his home. (Id. ¶ 59.) This "extreme and outrageous" conduct caused Plaintiff severe emotional distress. (Id. ¶ 64.)
Plaintiff alleges in Count VI, titled "Negligence," that Defendants knew or should have known of Father Posey's dangerous sexual propensities, and despite such knowledge, failed to protect Plaintiff. (Id. ¶ 70.)
In Count VII, titled "Vicarious Liability (Respondent Superior)," Plaintiff alleges that Defendants consented to, or knowingly permitted, Father Posey to exercise authority on their behalf; that Father Posey was under their direct supervision, employ, and control; and that his alleged conduct was undertaken when in the course and scope of his employment with Defendants. (Id. ¶¶ 74-75.) In Count VIII, titled "Negligent Supervision, Retention, and Failure to Warn," Plaintiff alleges that Defendants knew, or should have known, of Father Posey's dangerous sexual propensities toward minors and (a) negligently retained and/or failed to supervise him, (b) did not use reasonable care in investigating Father Posey, and (c) failed to provide adequate warning to Plaintiff. (Id. ¶ 80.)
Defendants move to dismiss Counts I through HI and V through VIII for failure to state a claim, see Fed.R.Civ.P. 12(b)(6), and Counts III and IV for failure to plead fraud with the requisite particularity, see Fed.R.Civ.P. 9(b). Plaintiff opposes the motion.

Discussion
In considering a motion to dismiss pursuant to Rule 12(b)(6), this Court must "tak[e] all well pleaded factual allegations as true and draw[] all reasonable inferences in favor of [Plaintiff]." Katun Corp. v. Clarke, 484 F.3d 972, 975 (8th Cir.2007). "`A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief.'" Id. (quoting Knieriem v. Group Health Plan, Inc., 434 F.3d 1058, 1060 (8th Cir. 2006)). Accord Kforce, Inc. v. Surrex Solutions Corp., 436 F.3d 981, 983 (8th Cir. 2006). "`However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.'" Levy v. Ohl, 477 F.3d 988, 991 (8th Cir.2007) (quoting DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002)). See also Great Plains Trust Co. v. Union Pacific R.R. Co., 492 F.3d 986, 995 (8th Cir.2007) (noting that court must assume factual allegations are true, but need not accept conclusory legal allegations as true). In diversity cases, the Court interprets the law of the forum state, i.e., Missouri, to determine whether the elements of the offenses have been pled. Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1062. (8th Cir.2005).
In addition to citing Rule 12(b)(6) in support of their request that certain counts be dismissed, Defendants cite Rule 9(b) in support of their request that *1131 Counts IE and IV be dismissed. Rule 9(b) requires that "the circumstances constituting fraud.. be stated with particularity." Fed.R.Civ.P. 9(b) (alteration added). Consequently, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir.2006). "Put another way, the complaint must identify the `who, what, where, when, and how' of the alleged fraud." Id. (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir.2003)).
Count I: Sexual Abuse and Battery. The factual allegations on which this count is based are that Father Posey sexually abused Plaintiff when acting within the course and scope of his employment with Defendants and that Defendants ratified this abuse and aided and abetted Father Posey in committing the abuse, in concealing the abuse, and in avoiding a criminal investigation.
"The Missouri Supreme Court has held that, depending on the facts and circumstances of a given case, the law of agency can be used to determine whether a priest was acting within the scope of his duties when engaged in a particular activity." Newyear v. Church Ins. Co., 155 F.3d 1041, 1044 (8th Cir.1998). "Under agency principles, an act is within the scope of employment when the act `was done in furtherance of the business or interests of the employer.'" Id. (quoting Maryland Cas. Co. v. Huger, 728 S.W.2d 574, 579 (Mo.Ct.App.1987)).
In H.R.B. v. J.L.G., 913 S.W.2d 92, 97 (Mo.Ct.App.1995), the court discussed the requirement of respondeat superior that the act of an agent be done in the furtherance of the principal's business, holding that an act satisfies this requirement "if it is done by virtue of the employment and in furtherance of the business or interest of the employer, regardless of the time, or motive of the conduct." Id. (citing P.S. v. Psychiatric Coverage, Ltd., 887 S.W.2d 622, 624 (Mo.Ct.App.1994)). "`If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business.'" Id. (quoting P.S., 887 S.W.2d at 624). The sexual misconduct of a priest against a student is not intended to further the employer's business, but rather results from "`purely private and personal desires.'" Id. (quoting P.S., 887 S.W.2d at 624). See also Newyear, 155 F.3d at 1044-45 (noting that under Missouri case law, "a priest does not act in the furtherance of the business or interests of his employer when he engages in sexual misconduct with parishioners"); Gibson v. Brewer, 952 S.W.2d 239, 246 (Mo.1997) (en banc) (rejecting attempt by parents of minor who was sexually abused by Catholic priest to hold Catholic Diocese liable under theory that priest was acting with the scope of employment, and holding that "intentional sexual misconduct by a priest and intentional infliction of emotional distress are not within the scope of employment of a priest and are in fact forbidden"); Gray v. Ward, 950 S.W.2d 232, 234 (Mo.1997) (en banc) (holding that intentional sexual activity by a priest does not "fall within the scope of employment of a priest, and the Diocese cannot be held liable under an agency theory").
The foundation for Plaintiffs claims against Defendants are his allegations that Father Posey sexually abused him when he was a student at Cardinal Ritter. This misconduct clearly reflects "purely private *1132 and personal desires" and not Defendants' business or interests. Plaintiff also alleges that Defendants ratified the alleged sexual abuse by Father Posey.
"Ratification in agency is an adoption or confirmation by one person of an act [such as entering into a contract] performed on his behalf by another without authority.'" Springfield Land and Dev. Co. v. Bass, 48 S.W.3d 620, 628 (Mo. Ct.App.2001) (quoting 2A C.J.S. Agency, § 63 (1972)) (alteration in original) (emphasis added). "[R]atification occurs when person A confirms or adopts the conduct of person B, who acted on behalf of person A in absence of person A's authority." Murphy v. Jackson Nat'l Life Ins. Co., 83 S.W.3d 663, 668 (Mo.Ct.App. 2002) (alteration added). Additionally, it is essential that person A have knowledge of all the material facts when charged with accepting the acts of person B. Id. "Thus, knowledge is an essential element of ratification." Id.
Plaintiff's attempt to hold Defendants liable under a ratification theory must fail because there is no allegation that the sexual misconduct of Father Posey was performed on their behalf. As noted above, that misconduct was not done to further Defendants' business or interests, nor is there any other alleged reason why the misconduct would benefit Defendants. Count I will be dismissed.
Counts II and III: Breach of Fiduciary Duty and Fiduciary Fraud. Both Counts II and IDE are based upon an alleged fiduciary relationship between Defendants and Plaintiff.
"`Breach of fiduciary duty is a claim arising in tort. . . .'" State Res. Corp. v. Lawyer's Title Ins. Corp., 224 S.W.3d 39, 48 (Mo.Ct.App.2007) (quoting Preferred Physician's Mut. Mgmt. Group v. Preferred Physician's Mut. Risk Retention, 918 S.W.2d 805, 810 (Mo.Ct.App. 1996)) (alteration in original). In a breach of fiduciary duty claim, "the proponent must establish that a fiduciary duty existed between it and the defending party; that the defending party breached the duty; and that the breach caused the proponent to suffer harm." Id. Accord Grewell v. State Farm Mut. Auto. Ins. Co., 162 S.W.3d 503, 508 (Mo.Ct.App.2005).
The Missouri Court of Appeals has expressly declined to "recognize breach-of-fiduciary-duty actions against clergy for sexual misconduct." H.R.B., 913 S.W.2d at 98. The conduct at issue in that case was also sexual abuse of a minor student by a priest who taught at a school run by the church. Claims of breach of fiduciary duty against the church and the archbishop, who directly supervised and controlled the church, were dismissed because allowing such actions "places courts on the slippery slope and is an unnecessary venture, since existing laws . . . provide adequate protection for society's interests." Id. (interim quotations omitted) (alteration in original). Other available causes of action "(i.e., intentional infliction of emotional distress, childhood sexual abuse), . . . do not require the trial court to determine whether defendant breached his trusted, confidential relationship with the plaintiff or whether the archbishop and the church breached their fiduciary duties towards their parishioners, including plaintiff, and abused their position of trust and confidence[,] as alleged[.]" Id. at 99 (internal quotations omitted) (last alteration added).
The court in H.R.B. noted that the question whether religious organizations can be held liable for breach of fiduciary duty based on allegations of a clergy member's sexual misconduct had not been addressed before by Missouri courts. 913 S.W.2d at 98. The Court can find no decision, nor do the parties cite to one, of *1133 the Missouri Supreme Court on this issue. "`When a state's highest court has not decided an issue, it is up to this [C]ourt to predict how the state's highest court would resolve the issue.'" Allstate Ins. Co. v. Blount, 491 F.3d 903, 908 (8th Cir.2007) (quoting Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir.2006)) (alteration added). "`Decisions of intermediate state appellate courts are persuasive authority that [the Court] follow[s] when they are the best evidence of what state law is.'" Id. (alterations added).
The appellate court's holding in H.R.B., supra, is "the best evidence" of what Missouri law is. Additionally, the holding is consistent with the well-established requirement under Missouri law that one element of a fiduciary relationship is that "things of value such as land, monies, a business, or other things of value which are the property of the subservient party, must be possessed or managed by the dominant party." Roth v. Equitable Life Assur. Soc., 210 S.W.3d 253, 260 (Mo. App.2006); A.G. Edwards & Sons v. Drew, 978 S.W.2d 386, 394 (Mo.Ct.App.1998); Matlock v. Matlock, 815 S.W.2d 110, 115 (Mo.Ct.App.1991). See also Shervin v. Huntleigh Securities Corp., 85 S.W.3d 737, 741 (Mo.Ct.App.2002) ("The question in determining whether a fiduciary relationship . . . exists is whether or not trust is reposed with respect to property or business affairs of the other.") (alteration and emphasis added). Assuming, without deciding, that the allegations of sexual abuse are true, the harm caused by that abuse is tragic but is not to the category of things necessary to establish a fiduciary relationship.
The Court finds, therefore, that the holding of H.R.B. precluding a claim for breach of fiduciary duty under the circumstances alleged here is dispositive of Counts II and III. These Counts will be dismissed.
Count IV: Fraud. Plaintiff alleges in Count IV that Defendants knew or should have known of Father Posey's sexual misconduct, and that of other of their agents, but failed to disclose such and that the threat of such misconduct was a material factor in his and his family's selection of a school for him to attend. Plaintiff further alleges that Defendants conspired with the Archdiocese and the Archbishop to conceal the misconduct and to defraud Plaintiff. As noted above, when alleging fraud, a plaintiff "must identity the who, what, where, when, and how of the alleged fraud." Joshi, 441 F.3d at 556 (interim quotations omitted).
Under Missouri law, the elements of a submissible case of fraud are:
"1) a false, material representation; 2) the speaker's knowledge of its falsity or his/her ignorance of the truth; 3) the speaker's intent that his/her representation should be acted upon by the hearer in the manner reasonably contemplated; 4) the hearer's ignorance of the falsity of the representation; 5) the hearer's reliance on the representation being true; 6) the hearer's right to rely thereon; and 7) the hearer's consequent and proximately-caused injuries."
BMK Corp. v. Clayton Corp., 226 S.W.3d 179, 193 (Mo.Ct.App.2007) (quoting Murray v. Crank, 945 S.W.2d 28, 31 (Mo.Ct. App.1997)). The failure to establish any one of these elements is fatal. Paul v. Farmland Indus., Inc., 37 F.3d 1274, 1277 (8th Cir.1994).
Plaintiff does not allege that Defendants represented that there was no sexual misconduct at Cardinal Ritter; rather, he pleads that the fraud was in not disclosing the misconduct that did indeed exist. Fraudulent nondisclosure is not recognized *1134 in Missouri as a separate tort Hess v. Chase Manhattan Bank, 220 S.W.3d 758, 765 (Mo.2007) (en banc). "Instead, . . . a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." Id. (alteration added). There is a duty to speak "when there is a relation of trust and confidence between the parties or when one of the parties has superior knowledge or information not within the fair and reasonable reach of the other parry." Bohac v. Walsh, 223 S.W.3d 858, 864 (Mo.Ct.App.2007).
Plaintiff has alleged that Defendants (who) committed fraud by not disclosing the sexual misconduct of their agents, including Father Posey (what and how), when he and his family were deciding whether he should attend Cardinal Ritter (when and where). These allegations satisfy Rule 9(b)'s criteria for alleging fraud.
Plaintiff's allegations of a conspiracy do not fare as well. These allegations include only the who and are fatally vague as to the what, how, when, and where. The conspiracy allegations will be dismissed.
Count V. Intentional Infliction of Emotional Distress. Based on allegations that Defendants intentionally and recklessly failed to supervise Father Posey after learning of his sexual misconduct and instead retained him without review, monitoring, or sanctions, Plaintiff seeks recovery in Count V for the intentional infliction of severe emotional distress.
"To recover for intentional infliction of emotional distress, [a plaintiff] must show (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional distress resulting in bodily harm." Cent Mo. Elec. Co-op. v. Balke, 119 S.W.3d 627, 636 (Mo.Ct.App.2003) (citing Thomas v. Special Olympics Missouri. Inc., 31 S.W.3d 442, 446 (Mo.Ct.App.2000)) (alteration added).
Citing K.G. v. R.T.R., 918 S.W.2d 795 (Mo.1996) (en banc), Defendants move to dismiss Count V on the grounds that Plaintiffs emotional distress is premised on, or based upon; another tort. In that case, a daughter argued that she stated a claim for the intentional infliction of emotional distress against her father for sexual abuse that allegedly occurred when she was a child. Noting that subjecting a child to sexual contact was "unquestionably extreme and outrageous conduct," the court held that a claim for intentional infliction of emotional distress would "not lie where the alleged conduct is intended to invade other legally protected interests of the plaintiff or intended to cause bodily harm." Id. at 799. The court further noted that "where one's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie. . . ." Id. (alteration added). Although the alleged conduct of Father Posey might be a battery, and thus not allowable of a claim against him for intentional emotional distress, see id. at 800, the claim at issue is against Defendants and is not only for the sexual abuse. Rather, it is for retaining Father Posey in a position where he had access to students regardless of the knowledge that he abused students and without taking any action to prevent him for doing so again. A separate emotional distress claim may "be supported by pleading some additional wanton and outrageous act[.]" Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 316 (Mo.1993) (en banc) (alteration added). Plaintiffs allegations in Count V state a claim.
*1135 Count VI: Negligence. Plaintiff alleges in Count VI that Defendants knew, or should have known, that Father Posey had a history of sexually exploiting minors in his care and failed to act on this information. Defendants move to dismiss this Count on the basis of the First Amendment and of the Missouri Supreme Court's ruling in Gibson, supra.
Holding that "[r]eligious organizations are not immune from civil liability for the acts of their clergy," the court in Gibson explored the limits of that liability. 952 S.W.2d at 246 (alteration added). "If neutral principles of law can be applied without determining questions of religious doctrine, polity, and practice, then a court may impose liability." Id. (alteration added). However, "[q]uestions of hiring, ordaining, and retaining clergy . . . necessarily involve interpretation of religious doctrine, policy, and administration." Id. at 246-47 (alterations added). This "excessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment" Id. at 247.
The First Amendment holding in Gibson would appear to bar Plaintiffs claims in Count V. The parties disagree, however, on whether this Court is bound by that holding. The question whether a federal court is bound by a state court's interpretation of the United States Constitution has been resolved for sometime. "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." Erie RR. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (emphasis added). If there is a federal constitutional issue, a federal court "[has] the duty to make [its] independent inquiry and determination." Aftanase v. Econ. Baler Co., 343 F.2d 187, 192 (8th Cir.1965) (alterations added).[3] A state court's interpretation of the United States Constitution is "of weight," but is "not binding upon a Federal Court." Id. at 193.
The First Amendment to the Federal Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const., amend. 1. These two, prohibitions are referred to as the Establishment Clause and the Free Exercise Clause. See Engel v. Vitale, 370 U.S. 421, 430, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962).
"The Establishment Clause . . . does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce individuals or not." Id. (alteration added). State action does not violate the Establishment Clause if it: "(1) has a secular . . . purpose, (2) neither advances nor inhibits religion in its principal or primary effect, and (3) does not foster an excessive government entanglement with religion." United States v. Corum, 362 F.3d 489, 495 (8th Cir.2004) (citing Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)). Accord Clayton by Clayton v. Place, 884 F.2d 376, 379 (8th Cir.1999) (applying test to public school district rule prohibiting dancing).
Count V is a negligence claim and does not single out or specifically protect any religion. "[T]he objective of the `secular legislative purpose' requirement is to `prevent the relevant government decision maker . . . from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters.'" *1136 Corum, 362 F.3d at 496 (quoting Corp. of Presiding Bishop of the Church of Jesus Christ of the Latter-Day Saints v. Amos, 483 U.S. 327, 335, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987)) (alterations added). Plaintiffs allegations are that an employer and school owner and operator, i.e., Defendants, continued to employ a teacher, i.e., Father Posey, after knowing he sexually abused their student. Civil liability based on these allegations are secular in nature. For the action to advance or inhibit religion, "`it Must be fair to say that the government itself has advanced religion through its own activities and influences.'" Id. at 496 (quoting Amos, 483 U.S. at 337, 107 S.Ct. 2862). This cannot be said in this case. Nor can it be said that this action fosters an excessive entanglement with religion. "[C]ertain practices that affect religion in some manner, or carry a religious connotation, are permissible in some phases of our governmental operation." Bogen v. Doty, 598 F.2d 1110, 1113 (8th Cir.1979). And, "where there is some peripheral effect or entanglement, it does appear to be a matter of degree." Id. Plaintiff's negligence claim affects Defendants, but has, at best, only a peripheral effect on religion. The claim does not violate the Establishment Clause.
"The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." Employment Div. Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). "Thus, the First Amendment obviously excludes all governmental regulation of religious beliefs as such." Id. (interim quotations omitted). "The government may not compel affirmation of religious beliefs, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." Id. (internal citations omitted). However, "free exercise does not relieve an individual of the obligation to comply with a Valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" Id. at 879, 110 S.Ct. 1595 (quoting United States v. Lee, 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982)).
Plaintiff alleges in Count V that Defendants knew, or should have known, of Father Posey's propensities and failed to take action to protect their students from his misdeeds. "[T]he Free Exercise Clause protects religious relationships primarily by preventing the judicial resolution of ecclesiastical disputes turning on matters of religious doctrine or practice." Sanders v. Casa View Baptist Church, 134 F.3d 331, 335-36 (5th Cir. 1998) (alterations added). However, "[t]he First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships." Id. at 336 (alteration added). To hold otherwise would "impermissibly place a religious leader in a preferred position in our society." Id. Accordingly, the court held that the First Amendment did not bar claims against a minister who allegedly engaged in sexual relationships with plaintiffs when providing them marital counseling. Id. at 336. See also Bollard v. Cal. Province of the Society of Jesus, 196 F.3d 940, 947 (9th Cir.1999) (Free Exercise Clause did not preclude action by novice alleging that he was sexually harassed while training to be a priest; order did not offer religious justification for harassment, but did condemn it as inconsistent with its beliefs); Martinelli v. *1137 Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409 (2nd Cir.1999) (Free Exercise Clause did not preclude tort action between diocese and child parishioner alleging he was sexually abused by priest). But see Scharon v. St. Luke's Episcopal Presbyterian Hosps., 929 F.2d 360, 363 (8th Cir.1991) (Free Exercise Clause did bar employment discrimination claims of chaplain allegedly terminated for violating several canonical laws; although chaplain claimed that defendants' contention that religious issues were basis for her termination was a mere pretext for unlawful discrimination, the resolution of those claims would require court to determine the meaning of religious doctrine and canonical law).
There is no allegation (or defense at this point in the case) that ecclesiastical and canon law is relevant to this case. The factual issues raised in Count V appear to be secular in nature and do require this Court to not resolve or inquire into any religious doctrines of Defendants. See Drevlow v. Lutheran Church, Missouri Synod, 991 F.2d 468, 471 (8th Cir.1993) (reversing district court's dismissal of an ordained minister's action for libel, negligence, and intentional interference with his employment on grounds that, although the First Amendment proscribes a secular court's "intervention into many employment decisions made by religious organizations based on religious doctrine or beliefs," there was no indication that the resolution of the action would involve an impermissible inquiry into the church's bylaws or religious beliefs) (emphasis added).
For the foregoing reasons, Count V will not be dismissed.
Count VII: Vicarious Liability (Respondeat Superior). In this Count, Plaintiff alleges that Defendants consented to, or knowingly permitted, Father Posey to exercise authority on their behalf, that he was under their direct supervision, employ, and control, and that his alleged conduct was undertaken when in the course and scope of his employment with Defendants. These allegations are insufficient to state a claim for the reasons set forth above in the discussion on Count I.
Count VIII: Negligent Supervision. Retention, and Failure to Warn. The allegations in this Count are sufficient to state a claim for the reasons set forth above in the discussion on Count VI.

Conclusion
Plaintiffs allegations in Count I, II, III, and VII and his conspiracy allegations in Count IV do not state a claim and are DISMISSED. Plaintiff's allegations in Counts V, VI, and VIII and his fraud allegations in Count IV do state a claim and will not be dismissed. Accordingly,
IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED in part and DENIED in part as set forth above. [Doc. 10]
IT IS FURTHER ORDERED that Plaintiffs motion for a hearing on the motion to dismiss is DENIED. [Doc. 21]
NOTES
[1] This case was originally filed in state court and was removed by Defendants to federal court on diversity grounds.
[2] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).
[3] The Aftanase case was a diversity case, as is the instant case.